OPINION OF THE COURT
Arthur B. Curran, J.
Motions were made by various defendants for an order directing the distribution of certain moneys on deposit with the Monroe County Clerk, in the amount of $25,854.72. In addition, the court was requested to determine the priority of the claims of defendants and other judgment creditors in and to said moneys.
Plaintiff, vis-á-vis an order to show cause, sought an order pursuant to CPLR 5242 (b), (c): (1) Entering an income deduc *345 tion order for support enforcement against defendant, Joseph Stanley Krolikowski, as "debtor” and the County Clerk of the County of Monroe as "income payor”; and (2) Directing the income deduction order shall take priority over any other assignment, levy of process, including, without limitation, any judgment entered in the office of the Clerk of the County of Monroe against defendant Joseph Stanley Krolikowski.
Defendant Joseph Stanley Krolikowski has no opposition to the claims of the judgment creditors for the balance of defendant’s share of the proceeds. However, defendant disputes the amount of arrears that plaintiff alleges to be due and owing and contends that since real property or the proceeds thereof are exempt from execution up to $10,000 under CPLR 5206, defendant is entitled to such an exemption from the claims of creditors.
On April 8, 1987 this court issued an order directing, among other things, that certain real property, owned by plaintiff and defendant-judgment debtor Krolikowski, be sequestered and sold as part of the divorce action between plaintiff and defendant Krolikowski pursuant to Domestic Relations Law § 244. The order further required that one half of the net proceeds be paid to plaintiff, with the balance of the net proceeds to be applied to defendant Krolikowski’s account subject to claims of defendant’s creditors having valid liens against defendant’s interest.
By subsequent order, signed by acting Supreme Court Justice Peter E. Corning on October 8, 1987, it was decreed that after completing the sale, transfer of title and disbursing of funds, the receiver/sequestrator herein shall file with the clerk of this court, his report thereof, and of this proceeding and any expenses and allowances for services rendered by the receiver/sequestrator herein and such receiver and sequestrator, James B. Doyle, Esq., shall deposit in the office of the Clerk of the County of Monroe the final net share of defendant from the sale proceeds of the real property to be distributed according to the terms of the prior order of this court made March 3, 1987 on application of either plaintiff, defendant, or any of the said judgment creditors of defendant.
As a result, the property was sold, and the sum of $25,854.72 was deposited with the Monroe County Clerk, which sum represents the judgment debtor’s net share of the proceeds resulting from the sale of the marital property.
Defendant-judgment creditors allege that the surplus money *346 resulting from the sequestered sale is personal property, substituted for the realty, for purposes of CPLR article 52. Such moneys are not income subject to the income execution provisions of CPLR 5241 et seq. Additionally, the judgment debtor is not entitled to a homestead exemption under CPLR 5206 (a), as the debtor has not occupied the residence for more than three years.
Plaintiff argues that the fund on deposit with the Monroe County Clerk is not exempt from plaintiff’s claim and an income deduction order for support enforcement pursuant to CPLR 5242 (b) has priority over the judgments entered against defendant Krolikowski.
Finally, defendant Krolikowski contends that the $10,000 exemption should apply since the sale pertains to the marital residence.
The case at bar presents a question that is novel to the courts of this State. The issue concerns the parameters of the meaning of the term "income” as defined under CPLR 5241 and 5242. More specifically, are surplus moneys received from a court-ordered sale of the marital residence income for purposes of support enforcement, pursuant to CPLR 5242 (b) and are such moneys to be given priority over other judgment creditors who perfected their liens prior to plaintiff.
CPLR 5241 and 5242 were created to afford aggrieved individuals an income execution to assist in the enforcement of tardy support obligations.
Under CPLR 5241 (a) (6), income is defined as: " 'Income’ includes any earned, unearned, taxable or non-taxable income, workers’ compensation, disability benefits, unemployment insurance benefits and federal social security benefits as defined in 42 U.S.C. section 662(f)(2), but excluding public assistance benefits paid pursuant to the social services law and federal supplemental security income.”
CPLR 5241 (h) provides that a levy pursuant to this section shall take priority over any other assignment, levy or process.
The Practice Commentaries by David D. Siegel (McKinney’s Cons Laws of NY, Book 7B, CPLR 5241, 5242, 1988 Pocket Part, at 109, 114) show that the intent and purpose of the enforcement statutes is to enable a former spouse to enforce a support judgment against "income”, in a priority basis over the income execution of a normal judgment creditor. The definition of "income” is thereby more expansive and seeks to reach what otherwise may be exempted assets.
*347 " 'Income’ has a special definition under 5241 (a) (6) — special in the sense that a number of sources are reachable which could not be reached by an ordinary money judgment because they would be exempt. The demands of the support judgment, occupying as it does a special place in the state’s priorities, give it access to what might otherwise be exempt sources * * *
"Priorities are addressed in subdivision (h). Priority is given to the 5241 execution and to the 5242 order. They take precedence over 'any other assignment, levy or process’, which of course includes those in enforcement of general money obligations, reduced to judgment or not, existing against the debtor. Should the debtor be confronted with multiple combinations of 5241 and 5242 obligations, proration is directed by subdivision (h).” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5241, 1988 Pocket Part, at 109-110, 111-112.)
Unfortunately, the statutes do not address nor define what may or may not be income in every specific instance.
The order of support sought to be enforced herein is the judgment of divorce made by the Supreme Court of the State of New York held in and for the County of Monroe and entered in the Monroe County Clerk’s office on March 3, 1987. The judgment of divorce directs the payment of maintenance and child support. As such, the judgment of divorce is clearly an "order of support” within the meaning of CPLR 5241 (a) (1).
The judgment of divorce directs defendant Krolikowski to pay maintenance and child support. Accordingly, defendant is considered a "debtor” within the meaning of CPLR 5241 (a) (2).
Plaintiff is the person to whom the support payments are directed to be paid under the judgment of divorce and meets the requirements as a "creditor” as defined in CPLR 5241 (a) (3).
Defendant, Krolikowski, does not dispute that arrears exist. However, he does contest the amount of arrearages that are due and owing. In any event, defendant is now in "default” as outlined in CPLR 5241 (a) (7).
However, the court does not agree with plaintiffs contention that the Monroe County Clerk is an "income payor” and that the $25,854.72 on deposit constitutes "unearned income”, *348 both as contemplated by the definitions under CPLR 5241 (a) (5) and (6).
Plaintiff puts forward an imaginative argument analogizing the surplus money on deposit from the sale of real property to the sale of real property as a taxable event pursuant to the Internal Revenue Code. According to plaintiff, the sale of real property may be taxed as a gain from the amount realized from the real property. The sale in turn may produce income, so that any gain realized on the sale of the residence may be taxable either as a capital gain or an ordinary gain. (See, Internal Revenue Code [26 USC] § 1001 [a] et seq.; § 1221; Tax Law art 22.)
Ingenious as plaintiff’s position may seem to be at first glance, the court does not agree that the sale of real property is the type of income that is subject to the ramifications of CPLR 5241 and 5242.
CPLR article 52 cannot be read in a vacuum. In order to better understand its intent, it must be read in conjunction with other pertinent provisions of the Domestic Relations Law[1] and the CPLR.
In the case currently before the court, the surplus moneys now on deposit with the Monroe County Clerk resulted from the court-ordered sale of the marital residence (real property). The surplus money obtained from said sale is now substituted in place and stead for the realty and must now be characterized as personal property and not as income.[2]
Domestic Relations Law § 244 does not allow "non-income assets”, to wit: real and/or personal property, to be reached through executions issued pursuant to CPLR 5241 or 5242. "Whether the amounts to be recovered are support-based or *349 not, entry of a money judgment pursuant to DRL 244 remains necessary if non-income assets of the debtor are to be reached. CPLR 5241 and CPLR 5242 are income execution remedies; in order to execute on personal or real property of the debtor, a money judgment under DRL 244 must first be obtained and then execution may be had under CPLR 5232 (personal property) and CPLR 5235 (real property). Prompt entry of a money judgment under DRL 244 may also be vital where there is a concrete prospect that the debtor will transfer property. Once a money judgment is docketed in a county in which the debtor owns realty, a lien in favor of the judgment creditor attaches. CPLR 5203 (subd. a). Likewise, once a money judgment is entered, restraining notices may be served pursuant to CPLR 5222 in order to prevent the transfer of property.” (See, Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 244, at 750.)
Viewing CPLR 5241 and 5242 as a segment of the enforcement provisions of CPLR article 52 the court finds that the income referred to in CPLR 5241 and 5242 is not intended to include surplus money from the court-ordered sale of real property. To interpret income as any moneys received from the sale of an asset (real and/or personal) is to ascribe too expansive a definition to a statute which allows income executions for support enforcement for the "income”, in its ordinary and customary meaning, of the judgment debtor. Indeed, if the Legislature intended property sold by order of the court to be included as income for CPLR 5241 and 5242 purposes it could have clearly specified this definition in the statute.
By law, the Monroe County Clerk is obligated to post interest on all surplus moneys deposited as a result of a court-ordered sale. The interest rate is a variable rate that is currently averaging approximately 5.5%.
CPLR 5241 (a) (6) defines income as including any earned, unearned, taxable or nontaxable income.
Although the surplus money from the court-ordered sale of real property is not income for CPLR 5241 and 5242 purposes, the court rules that the interest earned on the surplus money is eligible and does fall within the parameters of the said income deduction laws.
The income earned on the deposited moneys constitutes income under the CPLR 5241 definition, and the Monroe County Clerk is an income payor as per the meaning of "income payor” in CPLR 5241 (a) (5) (ii).
*350 In accordance with the findings and decision of this court, plaintiff will not be entitled to share in the surplus money proceeds being held by the Monroe County Clerk unless and until all judgment creditors who perfected their liens prior to plaintiff are paid in full.
"The money judgment becomes a lien on the judgment debtor’s real property, and secures a priority for the judgment creditor, when the judgment is 'docketed’ with the county clerk of the county in which the real property is located.” (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5203:2, at 102.)
As a result, the surplus money must be distributed to the judgment creditors, including plaintiff, in the order in which each creditor perfected its judgment, pursuant to CPLR 5203 and 5232.
With regard to the interest earned on the surplus money and payable by the Monroe County Clerk, an income deduction made by plaintiff pursuant to CPLR 5242 (b) against defendant Krolikowski as "debtor” and the Monroe County Clerk as "income payor” will have priority over the judgments entered against defendant Krolikowski. (See, CPLR 5242 [c]— "[a]n order pursuant to this section shall take priority over any other assignment, levy or process”; and 5241 [b].)
Defendant Krolikowski seeks to obtain $10,000 of the surplus moneys pursuant to the homestead exemption of CPLR 5206. Generally, the homestead exemption is only available to a debtor that "occupie[s]” the real property as a principal residence. (See, CPLR 5206 [a].) In addition, CPLR 5206 (c) establishes the rule regarding the extinguishment of the homestead exemption, as follows: "(c) Suspension of occupation as affecting homestead. The homestead exemption ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, except where the suspension of occupation is for a period not exceeding one year, and occurs in consequence of injury to, or destruction of, the dwelling house upon the premises.”
However, the issue for this court’s consideration is whether the homestead exemption will or will not apply when defendant leaves the marital residence pursuant to a judgment of divorce which grants plaintiff and the parties’ children exclusive use and occupancy of the marital residence.
Plaintiff, citing First Fed. Sav. & Loan Assn. v Brown (78 AD2d 119), now states that the homestead exemption of CPLR *351 5206 (a) does not exempt the debtor’s homestead from a mortgage foreclosure sale, since the surplus money arising out of a foreclosure of real property becomes personal property.
"The 'homestead exemption’ under CPLR 5206 (subd [a]) exempts only 'real property’ from application to the satisfaction of money judgments. Inasmuch as the surplus money arising out of this foreclosure sale becomes personal property, CPLR 5206 has no application to such funds * * *
"The exemption of the land comprising the homestead is only an exemption from sale or execution while the premises are occupied by the debtor or his family. While the lien attaches to the property, it remains dormant or in abeyance while premises are occupied as a homestead and becomes active or potential as soon as the homestead right is lost, abandoned or terminated such as in the foreclosure of a purchase-money mortgage” (First Fed. Sav. & Loan Assn. v Brown, supra, at 123).
In Fontana v Fontana (89 AD2d 843) the plaintiff’s wife obtained a money judgment against the defendant husband representing arrears in child support payments. Since defendant did not occupy the property as his principal residence, the court concluded that defendant is precluded from invoking the homestead exemption to prevent plaintiff from enforcing her money judgment against him.
In the instant action, defendant Krolikowski attempts to distinguish his situation on the premise that his abandonment of the homestead was not voluntary but court ordered. A search of the record evidences an inconsistency in defendant’s position. In proceedings had before the Hon. Myron E. Tillman, Supreme Court Justice, on January 13, 1984, the court noted that defendant’s exclusion from the marital residence was made a part of the over-all stipulation between the parties that ultimately become part of their separation agreement.
"the court: [I]n addition, the husband agrees to extend to the wife and to the children the exclusive occupancy of the premises at 4 High Point Trail, Fair port, New York, until such time as the youngest child is emancipated * * *
"the court: Yes. With those additions, Mr. Krolikowski, do you understand the stipulation?
"mr. krolikowski: Yes, I do.
"the court: You stipulate and agree to it?
"mr. krolikowski: Yes, I do.
*352 "the court: Do you agree it is fair and reasonable?
"mr. krolikowski: I do.” (See, Transcript of proceeding, Krolikowski v Krolikowski, Jan. 13, 1984, at 4, 5.)
CPLR 5206 is very specific and limiting in its exceptions to the rule regarding the loss of the homestead exemption. It contains no provision for invoking the exemption because the court has ordered defendant’s departure from the marital residence pursuant to a stipulation and/or separation agreement entered into between the parties. Therefore, a debtor’s lack of occupancy for any other reason, not specified in CPLR 5206, does not serve to preserve a debtor’s homestead exemption. Thus, the court holds that where the debtor has clearly given up his right to occupy and/or leaves the marital residence, the homestead exemption is no longer available. (See also, Fontana v Fontana, supra.)
Defendant Krolikowski left the marital residence over three years ago and has not occupied the property as a residence since. Consequently CPLR 5206 (c) extinguishes defendant’s right to claim the homestead exemption.

. Also see, First Fed. Sav. & Loan Assn. v Brown (78 AD2d 119, 123 [4th Dept 1980]) whereby the Fourth Department held:
"[T]he surplus money arising out of this foreclosure sale becomes personal property * * *
"Surplus money realized upon a foreclosure sale is not a general asset of the owner of the equity of redemption but stands in place of the land for all purposes of distribution among persons having vested interests or liens upon the land.” (Emphasis added.)

. Applying plaintiff’s internal revenue test the court finds that only the increase in value of the marital residence would be taxable; not the entire sale price. Proceeds from the sale of real property are only taxable if they exceed the taxpayers’ basis in the property. The court in reading the affidavits presented and hearing the oral arguments has no evidence before it concerning either the funds realized on the sale of the property or those invested in it upon the property’s acquisition.