DON KING PRODUCTIONS, INC. and Don King, Plaintiffs,

v.

Pinklon THOMAS, Jr., Richard Gidron, Roland Jankelson, Althea Jones and The United States, Defendants.

No. 88 Civ. 8771 (CSH).

United States District Court, S.D. New York.

Oct. 2, 1990.

Sidley & Austin (Robin Roger, of counsel), New York City, for plaintiffs.

Alan Freiss, New York City, for defendant Pinklon Thomas, Jr.

Shatz & Meier (Steven K. Meier, of counsel), New York City, for defendant Richard Gidron.

Greenberg, Shimerelson, Weinroth & Etish (Allen A. Etish, of counsel), Camden, N.J., for defendant Roland Jankelson.

Robert M. Sosin, Birmingham, Mich., for defendant Althea Jones.

Dist. Counsel, U.S. Dept. of Treasury, IRS, Newark Dist. Director Office, IRS (Arthur Yellin, of counsel), Newark, N.J., Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, and Diogenes P. Kekatos, Asst. U.S. Atty., for the U.S.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs Don King Productions, Inc. and Don King bring this action for interpleader and injunctive relief pursuant to 28 U.S.C. § 1335 and § 2361. Defendant United States moves for partial summary judgment claiming priority to the interpleader funds. Defendants Gidron and Jones have cross-moved claiming that they have priority to the interpleader funds.

### Background

On December 12, 1988, plaintiffs Don King Productions, Inc. ("DKP") and Don King commenced the instant interpleader action, pursuant to 28 U.S.C. § 1335, to obtain a determination of the defendants' rights to money which DKP owed defendant Pinklon Thomas, Jr. ("Thomas"). Thomas had contracted with DKP to receive a purse of $150,000 for participating in a December 9, 1988 boxing match with Evander Holyfield held in Atlantic City, New Jersey (the "Bout"). Between August 15, 1987 and June 26, 1988, DKP allegedly made payments to Thomas totaling $53,340.67 as advances from his purse for the Bout. Pursuant to the alleged terms of the contract, on completion of the Bout DKP was to pay $37,500 directly to Thomas' manager, New Opportunities, Inc.; DKP's co-promoter, Main Events Monitor, was to pay $26,250 directly to Angelo Dundee, Thomas' trainer; and DKP was to pay $32,909.33 to Thomas, representing the remainder of the purse less amounts advanced by DKP to Thomas. DKP was reluctant to pay Thomas the remaining $32,909.33 because DKP was given notice of at least four other conflicting claims to Thomas' purse from the bout. As a result of the conflicting claims, plaintiffs are unsure as to who is entitled to what amount. Thus, DKP and King have paid $32,909.33 into the registry of this Court and have filed the instant interpleader action so that the interpleaded defendants can settle among themselves their rights to the funds.

*Defendant Richard Gidron* claims priority to the fund by virtue of a stipulation of settlement entered in *Gidron v. Pinklon Thomas, Don King and Don King Productions, Inc.*, No. 15916/84 (New York Supreme Court, Bronx County) in 1985. In that action, Gidron was attempting to collect monies owed to him from a previous management contract between himself and Thomas. The contract was allegedly violated by Thomas when he entered into a new management agreement with Don King and DKP. The Clerk of the Bronx County Court attached and held $140,000 until a settlement was negotiated. According to the terms of the settlement, Thomas agreed to pay Gidron $75,000 from the monies held by the Clerk of Bronx County and $50,000 from the proceeds of each of his next three fights. Pursuant to the terms of the settlement, DKP and Don King agreed that in the event they were the promoter of any of Thomas' next three prize fights, they would withdraw from the proceeds of said fights, prior to distribution to Thomas, the sums due to Gidron. The stipulation of settlement was never reduced to and docketed as a judgment.[1] Gidron claims that the settlement agreement was "so ordered" by the court although the document itself was not signed by the judge. The document was signed by Thomas and King but not by Gidron.

Thereafter, Thomas fought Trevor Berbick and King and DKP delivered a check to Gidron for $50,000. Thomas also fought Michael Tyson and after further litigation, an additional $50,000 was paid to Gidron.

In order to make sure that Thomas, DKP and King would pay him $50,000 from the proceeds of Thomas' third fight, Gidron moved for an Order to Show Cause, Index No. 15916/84 in the Supreme Court of New York, Bronx County for a temporary restraining order on the proceeds of the Bout. On December 6, 1988, Judge Lewis Friedman issued an order whereby DKP, King and Thomas were to show cause on December 16, 1988 why "$50,000 and interest, costs and counsel fees thereon should not be payable to [Richard Gidron] from the proceeds of [the Bout] as defendants may have an interest therein ..." DKP, King and Thomas received notice of the show cause hearing the same day. The Bronx County Order also provided that "pending a hearing of this matter, $50,000 of any monies arising from the [Bout] received by Don King and/or DKP and/or Thomas, their agents and/or attorneys shall be placed into escrow with the Clerk of the Supreme Court, Bronx County ..." On December 12, 1988, Judge Leval of this Court, to whom the captioned case was originally assigned, enjoined those proceedings by Temporary Restraining Order.

*Defendant Althea Jones* claims priority to the interpleader funds as a result of a Judgment of Filiation and Order For Support entered by the Oakland County Circuit Court for the State of Michigan on January 6, 1988. On November 15, 1973, Ms. Jones gave birth to Paquana Jones. Pinklon Thomas was the father. In 1986, Ms. Jones commenced a paternity action on behalf of herself and her daughter. In the Judgment of Filiation and Order For Support, Thomas acknowledged that he was the father of Paquana. He was ordered to pay $7,500 in the form of a money judgment to Ms. Jones for all support and maintenance obligations that had accrued from the time of Paquana's birth until November 9, 1987, and to pay $100 per week in support and maintenance of Paquana commencing November 9, 1987 and continuing until she reached the age of her majority or until further order of the Court. Thomas was also ordered to notify Ms. Jones in writing of any professional boxing match in which he was going to participate, and the date, promoter and purse amount of each fight at least 30 days prior to such fight or upon first learning of such fight, whichever was earlier.

In early December of 1988, Ms. Jones' attorneys learned through a newspaper ar-

1. In June 1989, the United States served a formal request on Gidron requesting that he admit that the stipulation of settlement was never reduced to and docketed as a judgment. Insofar as Gidron never responded to the Government's admission request, this matter is deemed admitted pursuant to F.R.Civ.P. 36(a).

ticle that Thomas was going to fight Evander Holyfield in Atlantic City on December 9, 1988. Thomas never informed Ms. Jones of this boxing match in breach of his court-ordered obligations. Ms. Jones' attorneys swore out an Affidavit of Garnishment indicating that Thomas then owed Jones $14,025 on her Judgment. The Oakland County Circuit Court issued a Writ of Garnishment on December 6, 1988 directing DKP to disclose how much it owed to Thomas. Copies of the Affidavit and Writ of Garnishment and a Garnishee Disclosure Form were forwarded to the Sheriff of Atlantic County, New Jersey on December 6, 1988, and were served on DKP on December 8, 1988.

*The Government* claims priority to the interpleader fund as a result of federal tax liens issued and filed against Thomas for unpaid federal income taxes. At present, the government alleges that Thomas is indebted to the government for unpaid income taxes for the years 1986 and 1987 in the amounts of $149,905.90 and $120,361.53, respectively. With interest and penalties, Thomas allegedly owes the government $480,934.91. The IRS filed Notices of Federal Tax Lien on December 5, 1988 in Atlantic County, New Jersey, where the bout was to take place, and on December 8, 1988 in Oakland County, Michigan, the county of Thomas' residence. In addition, on December 9, 1988, a revenue officer of the IRS served a Notice of Levy on DKP regarding the tax liabilities of Thomas.

Thomas and Roland Jankelson were also named as defendants by plaintiffs Don King and DKP since they had possible claims to the interpleader funds. On or about December 7, 1988, DKP and King received notice by receipt of an Order to Show Cause with Temporary Restraining Order issued by Judge Joseph Rodriguez of the United States District Court for the

District of New Jersey, in a matter entitled *Pinklon Thomas v. Roland Jankelson,* Case No. 8304611, directing that plaintiff Thomas show cause on December 13, 1988 why "an order should not be entered ordering the disbursement of one-third (⅓) of the purse from the [Bout] to be paid to [Thomas] by ... DKP." The order further provided that "DKP be restrained from paying any proceeds of the purse to [Thomas] pending further order of this Court ..." The Order to Show Cause with Temporary Restraining Order was issued pursuant to Jankelson's affidavit, which claimed that Thomas still owed Jankelson $31,666.99 from a Stipulation of Settlement which was previously approved by the same court. In that action, Jankelson was apparently trying to collect monies owed to him from a management contract between himself and Thomas. Defendants Thomas and Jankelson are no longer parties to this litigation.[2]

### Procedural History

On the day the interpleading plaintiffs filed this action, they moved by order to show cause to enjoin defendants from further prosecuting any of their respective actions described *supra,* or from instituting any additional proceedings in any State or United States court affecting the obligation of plaintiffs to Thomas until such time as the rival claims to the interpleader funds are resolved. Judge Leval granted a temporary restraining order pending a decision on plaintiffs' motion for injunctive relief and scheduled a hearing for December 15, 1988. At that hearing, Judge Leval ordered that the interpleader action be resolved in two phases. First, the United States would initiate a motion to establish its alleged priority to the interpleader funds; defendants would also submit memoranda of law on the issue of priority. Secondly, after the Court resolved the question of priority, the parties would brief the issue of what additional monies, if any,

2. By motion dated February 22, 1989, defendant Althea Jones requested that a default judgement be entered against defendants Pinklon Thomas and Roland Jankelson pursuant to Rule 55 based on the fact that defendants Thomas and Jankelson did not answer the interpleader complaint or make a formal appearance in this case at the December 15, 1988 hearing. The record contains no responsive papers from either Thomas or Jankelson. Since the docket sheet reflects no disposition of Jones' request, this court will now grant Jones' motion and enter a default judgment against defendants Thomas and Jankelson.

should be included in the interpleader fund.[3]

On April 11, 1990, the United States moved for partial summary judgment pursuant to F.R.C.P. 56 on the issue of priority to the interpleader funds, in accordance with the schedule worked out by Judge Leval on December 15, 1988. On May 14, 1990, this case was reassigned to me. The only issue before this Court at present is the priority of defendants Jones, Gidron and the United States to the interpleader funds.

## Discussion

### 1. Althea Jones and the Government

█ 26 U.S.C. § 6321 provides that a tax indebtedness creates a lien in favor of the United States upon the taxpayer's property. 26 U.S.C. § 6331 provides that the government may levy upon all property of the tax debtor, except that property exempted from levy under § 6334. Included in property exempt from levy under § 6334 is so much of a taxpayer's salary, wages, or other income as is necessary to comply with a judgment for support of minor children.[4] § 6334(a)(8).

Some courts have held that property exempt from levy under § 6334 is not exempt from the government's lien under § 6321. See *United States v. Barbier*, 896 F.2d 377, 379 (9th Cir.1990); *In re Jackson*, 80 B.R. 213 (Bankr.D.Colo.1987). The Court in *Barbier* reasoned that to hold otherwise would be inconsistent with Supreme Court precedent and the statutory purpose of ensuring that the government is able to secure collection of tax revenues. In addition, the *Barbier* court, reasoning from the differences between a levy and a lien, held

that § 6334 is a limitation on the government's ability forcibly to seize the taxpayer's property, but not a bar to the government's ability to assert a security interest in such property. The *Jackson* court, also recognizing the difference between levy and lien, held that while "26 U.S.C. § 6334 may prohibit the *involuntary* seizure of certain property by the I.R.S., it does not destroy the property interest, or lien, granted by 26 U.S.C. § 6321. If a debtor chooses to *voluntarily* dispose of property, the I.R.S. is entitled to assert its lien and receive payment." *In re Jackson*, 80 B.R. at 215 (emphasis in original). In other words, the fact that the IRS may not levy against exempted property should not prevent the lien from attaching to it as other methods of enforcing the lien are still available.

However, other courts have held that assets exempted from levy under 26 U.S.C. § 6334 are not subject to lien under § 6321. *Matter of King*, 102 B.R. 184 (Bankr.D. Neb.1989). § 6331(b) defines the term "levy" as "includ[ing] the power of distraint and seizure by any means." The *King* court, construing § 6334 in light of § 6331(b), held that § 6334 exempts the enumerated property from all forms of execution, not just levy. Since a lien that cannot be enforced is of no avail, the Court concluded that assets exempted from levy under § 6334 cannot be applied to satisfy tax liens.

Neither the *Barbier*, *Jackson* or *King* courts take into account the type of asset that is exempt from levy under § 6334 when considering whether or not it is still subject to a tax lien under § 6321.[5] The argument that § 6334 exempts property

---

**3.** Nothing in the record indicates that Judge Leval made any decision during the conference or otherwise regarding preliminary and/or permanent injunctive relief. Accordingly, this court will treat the claim for injunctive relief as still pending. Since defendants have not briefed this issue, it is not ripe for decision.

**4.** The statute provides, *inter alia:*
There shall be exempt from levy ... [i]f the taxpayer is required by judgment of a court of competent jurisdiction, entered prior to the date of levy, to contribute to the support of

his minor children, so much of his salary, wages, or other income as is necessary to comply with such judgment. 26 U.S.C. § 6334(a)(8).

**5.** In *Barbier*, the assets exempt from levy under § 6334 were $1000 of clothing and $1500 of household goods. In *Jackson*, the exempt assets included an automobile, furniture, personal effects and $460 in back wages. In *King*, the exempted assets included household furnishings, tools for a trade, wearing apparel and $50 in bank deposits.

from levy without affecting the underlying tax lien only makes sense in regard to property such as wearing apparel and school books, furniture and personal effects, and books and tools of a trade. "A lien enables the taxpayer to maintain possession of protected property while allowing the government to preserve its claim should the status of property later change." *Barbier*, 896 F.2d at 379. In these instances, the asset exempt from levy can remain in possession of the debtor and be productively used while the government retains its underlying security interest.

In stark contrast, income necessary to satisfy child support obligations cannot remain in the possession of the taxpayer and be used productively. Common sense dictates that a lien cannot attach to child support monies that are exempt from levy; otherwise, the money would remain in limbo and not be available for use by anyone. The rationale behind exempting child support orders from levy is obvious; exemption allows the delinquent taxpayer to fulfil his court ordered obligation to support his children. If the debtor does not support his children, the government will end up doing so. The legislative purpose behind excepting from levy income necessary to comply with child support orders would be frustrated if the exemption only shielded child support monies from levy, but did not allow the tax debtor to support his children.

In the instant case, the Judgment of Filiation and Order for Support was entered by the Oakland County Circuit Court on January 6, 1988, long before the IRS attempted to levy on the interpleader funds on December 5, 1988. Thus, the government cannot levy on that portion of the interpleader funds that are necessary to allow Thomas to comply with the court ordered support obligation; nor can it assert a lien against them superior to the James claim. Therefore, Jones has priority over the government to the interpleader funds.

2. Richard Gidron and the Government

§ 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The broad language of § 6321 reveals that Congress meant to reach "every interest in property that a taxpayer might have," *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985), including all property that the tax debtor subsequently acquires. *Glass City Bank v. United States*, 326 U.S. 265, 268, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945).

█ But the lien can only attach to property which the taxpayer owns at the time of assessment. 26 U.S.C. § 6322; see *United States v. Fontana*, 528 F.Supp. 137 (D.C.N.Y.1981). To determine the extent to which a taxpayer has an interest in property, state law is consulted. *Medaris v. United States*, 884 F.2d 832 (5th Cir. 1989); *National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925; *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). This follows from the fact that the federal statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925 (quoting *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)). Thus, it has been held that property, after it has been assigned for consideration by the taxpayer, cannot be subjected to the government's lien. *City of New York v. United States*, 283 F.2d 829 (2nd Cir.1960). Once it is determined that the delinquent taxpayer has rights in property so that the federal lien attaches in the first place, federal law determines the priority of competing liens asserted against such property. *Fontana*, 528 F.Supp. at 143 (citing *Aquilino*, 363 U.S. at 513, 80 S.Ct. at 1280).

█ A stipulation of settlement is a contract and is treated as such by the courts. *Janus Films, Inc. v. Miller*, 801 F.2d 578 (2nd Cir.1986) ("[a]greements that end lawsuits are contracts ..."); *Hallock v. State*,

64 N.Y.2d 224, 485 N.Y.S.2d 510, 512, 474 N.E.2d 1178, 1180 (Ct.App.1984) ("[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation."); *In re Air Crash Disaster, Etc.*, 687 F.2d 626 (2nd Cir.1982) ("[i]t is beyond a district court judge's discretion to alter the terms of or refuse to enforce a settlement agreement, absent special circumstances, such as a material breach of the agreement or duress."). The determination of property rights, therefore, under a stipulation of settlement will be controlled by the application of relevant contract law.

■ Applying the law to the instant case, the government cannot claim that their lien on the interpleader funds has priority over Gidron's interest in the funds if their lien does not attach under § 6321 in the first place. The Stipulation of Settlement between Gidron and Thomas dated December 11, 1985 was a valid assignment made for valuable consideration. In exchange for the settlement of the lawsuit, Thomas assigned $50,000 of the proceeds from his next three fights to Gidron. Thus, Gidron had a $50,000 interest in the $150,000 purse before the federal tax liens attached to Thomas' property on November 9, 1987 and June 5, 1988, the respective dates of assessment for Thomas' delinquent 1986 and 1987 income taxes. Since Gidron's interest in the purse predates the tax lien, Gidron has priority over the government to the interpleader funds.

3. Althea Jones and Richard Gidron

■ Under New York law, the legislature has given priority to child support orders over wage assignments and garnishments. N.Y.C.P.L.R. § 5241 and § 5242 replacing Pers.Prop.Law § 49–b; *Long Island Trust Co. v. United States Postal Service*, 647 F.2d 336, 339 (2nd Cir.1981) ("[a]s between creditor garnishments and support order garnishments, New York gives priority to those for support, regardless of the timing of those garnishments"); *Bigness v. Obit*, 112 Misc.2d 1078, 448 N.Y.

S.2d 120; *Liedka v. Liedka*, 101 Misc.2d 305, 423 N.Y.S.2d 788 (Fam.Ct.Onon.Co. 1979) ("[g]iven the strong public policy for the support of dependents, the priority given to support payments is logical."). Thus, Althea Jones has priority over Gidron to the interpleader funds, even though the Writ of Garnishment enforcing her Judgment of Filiation and Order of Support was issued on December 6, 1988, more than three years after Gidron and Thomas entered into the Stipulation of Settlement which assigned Gidron $50,000 from Thomas' purse from the bout.

*Conclusion*

For the foregoing reasons, Jones will have priority to the interpleader funds, followed by Gidron and the government respectively. She is to be paid from the interpleader funds an amount in accordance with the Order of Support entered by the Oakland County Circuit Court on January 6, 1988. Since Jones' claim can be satisfied from the extant interpleader funds, I direct that she be paid from those funds; moreover, it is not necessary for her to brief the issue of whether plaintiffs should be required to add money to the interpleader funds.

The parties are directed to settle an Order and Judgment consistent with this Opinion on ten (10) days' notice within fourteen (14) days from the date of this Order.

Gidron and the government are directed to submit briefs within sixty (60) days from the entry of this order on the issue of what additional monies, if any, should be added to the interpleader funds. The plaintiffs DKP and Don King have thirty (30) days to respond. Defendants Don King and DKP will then have fourteen (14) days to submit reply memoranda should they desire.

It is SO ORDERED.