945 F.2d 529
 68 A.F.T.R.2d 91-5711, 91-2 USTC P 50,474
 DON KING PRODUCTIONS, INC. and Don King, Plaintiffs,
v.
Pinklon THOMAS, Jr., Richard Gidron, Roland Jankelson,
Althea Jones, and the United States, Defendants,
Althea Jones and Richard Gidron, Defendants-Appellees,
Richard Gidron and the United States, Defendants-Appellants.
 Nos. 1707, 2000, Dockets 91-6067, 91-6083.
 United States Court of Appeals,
Second Circuit.
 Argued June 27, 1991.
Decided Sept. 23, 1991.
 
 Kathleen A. Zebrowski, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Edward T. Ferguson, III, Asst. U.S. Atty., New York City, of counsel), for defendant-appellant U.S.
 Steven K. Meier, New York City (Shatz Meier & Scher, New York City, of counsel), for defendant-appellant-appellee Richard Gidron.
 Robert M. Sosin, Birmingham, Mich. (Alspector, Sosin, Mittenthal & Barson, P.C., Birmingham, Mich., of counsel), for defendant-appellee Althea Jones.
 Before CARDAMONE, MINER and MAHONEY, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendant-appellant the United States (the "government") and defendant-appellant-appellee Richard Gidron appeal from a judgment entered in the United States District Court for the Southern District of New York (Haight, J.) establishing that the claim of defendant-appellee Althea Jones to interpleader funds had priority over the claim of Richard Gidron, which had priority over tax liens of the government. Don King Prods. v. Thomas, 749 F.Supp. 79, 85 (S.D.N.Y.1990).
 
 
 2
 The government contends that the district court erred in determining that Gidron's claim had priority over its tax liens. First, it argues that since the stipulation of settlement dated December 11, 1985 upon which the claim is based, never was reduced to judgment, Gidron cannot avail himself of the statutory exception which protects certain persons, including "judgment lien creditors," against unrecorded federal tax liens. Second, the government maintains that the stipulation of settlement cannot be found to be prior to the government's tax liens because it represents an inchoate claim. In the stipulation of settlement, Thomas purported to assign to Gidron proceeds from purses of three prizefights to occur at some unspecified time in the future.
 
 
 3
 Gidron argues that the district court erred in finding that Althea Jones' claim of child support has priority over his claim, since his claim accrued on December 11, 1985 and Jones' judgment of filiation and order for support is dated January 6, 1988.
 
 
 4
 We agree with the government that the district court erred in finding that Gidron's claim had priority over the federal tax liens. Because Gidron's stipulation of settlement was not reduced to judgment, Gidron was required to establish that his lien was "first in time" and choate. However, the right to the proceeds of future unspecified prizefight purses arising from the assignment by Thomas, evidenced by the stipulation of settlement, was inchoate.
 
 
 5
 Regarding the order of priority between Gidron and Jones, we hold that the district court correctly found that a judgment of filiation and order for support has priority over a stipulation of settlement never reduced to judgment, even though the support judgment was filed after the stipulation of settlement was entered into.
 
 BACKGROUND
 
 6
 One-time holder of the World Boxing Council Heavyweight title, Pinklon Thomas, Jr. contracted with Don King and Don King Productions (collectively, "DKP") to receive a purse of $150 thousand for participating in a boxing match with Evander Holyfield. The event was scheduled to be held on December 9, 1988 in Atlantic City, New Jersey. In accordance with the terms of the contract, DKP disbursed $117,090.67 as advances and payments to Thomas, his manager, and his trainer, Angelo Dundee. Faced with conflicting claims to the balance of the purse, $32,909.33, DKP commenced an interpleader action, pursuant to 28 U.S.C. § 1335(a), placing the $32,909.33 in the registry of the district court and naming five interpleader defendants. Only three of the named defendants--the government, Richard Gidron and Althea Jones--litigated their claims to the interpleaded fund.
 
 
 7
 Althea Jones ("Jones") claimed priority to the funds by reason of a January 6, 1988 judgment of filiation and order for support entered by a Michigan state court. Apparently, Thomas had acknowledged that he was the father of Paquana Shareces Jones in a paternity action commenced by Althea Jones in 1986. Under the judgment of filiation and order for support, Thomas was required to pay $7,500 in support and maintenance obligations that had accrued from the time of Paquana Shareces Jones' birth until November 9, 1987 and to pay $100 per week for support and maintenance from November 9, 1987 until Paquana reached the age of majority. Additionally, Thomas was ordered to notify Jones about any professional boxing matches in which he was to participate. However, Jones learned about the Thomas/Holyfield bout not from Thomas but through a newspaper advertisement. On December 6, 1988, at Jones' request, the Michigan court issued a Writ of Garnishment, which was served on DKP, ordering DKP to disclose its indebtedness to Thomas. At that time, $14,025 in unpaid child support allegedly was owed to Jones.
 
 
 8
 Richard Gidron claimed priority by reason of a stipulation of settlement, dated December 11, 1985, allegedly entered in the New York Supreme Court, Bronx County. At that time, Gidron had initiated an action against Thomas and DKP for money owed under a management contract between Thomas and Gidron, which Thomas had breached when he entered into a management contract with DKP. Under the settlement agreement, Thomas agreed, among other things, to pay to Gidron $50 thousand from each of his next three prizefight purses. DKP agreed that in the event it promoted any of the next three fights, it would withhold $50 thousand per fight and pay that amount to Gidron. The stipulation of settlement never was docketed as a judgment.
 
 
 9
 The government claims priority on account of federal tax liens. Thomas owes the government income taxes for the years 1986 and 1987 in the amounts of $149,905.90 and $120,361.53, respectively, plus interest and penalties. The IRS made a deficiency assessment against Thomas for the unpaid 1986 taxes on November 9, 1987 and for the unpaid 1987 taxes on June 6, 1988. Federal tax lien notices were filed on December 5, 1988 in Atlantic City, the place of the Holyfield-Thomas fight, and on December 8, 1988, in Oakland County, Michigan, the place where Thomas resides. On December 9, 1988, DKP was served with the government's notice of levy, in which DKP was directed to pay to the government any wages or other income that was to be paid to Thomas.
 
 
 10
 In 1986, Thomas lost his World Boxing Council heavyweight title to Trevor Berbick; in accordance with the terms of the stipulation of settlement, $50 thousand was paid to Gidron from the purse for that fight. Thereafter, in May 1987, Thomas suffered a devastating knockout loss to Michael Tyson. After defeating Thomas, Tyson went on to defeat Tony Tucker, the then-International Boxing Federation heavyweight titleholder, resulting in the unification of the heavyweight championship titles--World Boxing Council, World Boxing Association and International Boxing Federation--in one professional boxer. After further litigation, Gidron was able to recover $50 thousand from the proceeds of the Tyson match.
 
 
 11
 Gidron learned about the upcoming Thomas/Holyfield match from an advertisement in the New York Post. Fearing that DKP would not pay the final $50 thousand from the last of the three fights, Gidron obtained in the Bronx County court an order directing Thomas to show cause by December 16, 1988 why $50 thousand should not be paid to Gidron from the proceeds of the fight scheduled for December 9, 1988. It was in response to that order that DKP filed an interpleader action in federal district court on December 12, 1988. The district court enjoined the state court proceedings. 749 F.Supp. at 82.
 
 
 12
 On October 2, 1990, the district court in a Memorandum Opinion and Order held that Jones had priority over Gidron and the government, and that Gidron had priority over the government. Id. at 85. After further litigation to determine whether additional funds were to be added to the amount held in the registry of the district court, the government moved pursuant to Fed.R.Civ.P. 54(b) for entry of a final judgment on the interpleader priority question. Finding no just cause to delay the entry of a partial judgment, the district court granted the government's motion, and a judgment was entered on January 3, 1991. Remaining for disposition are cross-claims interposed against DKP to recover a money judgment. The government appeals from the portion of the judgment in which the court determined that Gidron's claim had priority over its federal tax liens. Gidron appeals from the portion of the judgment in which the court determined that Jones' support claim had priority over his claim.
 
 DISCUSSION
 
 13
 The government contends that the district court's rationale in finding that Gidron's claim has priority over federal tax liens is flawed. The district court reasoned that Thomas, having made an assignment of funds to Gidron in 1985, prior to the assessment of taxes and the consequent attachment of the tax liens, see 26 U.S.C. § 6322, had no further interest in the assigned funds when the tax liens attached. The court concluded the tax liens could not "attach under § 6321 in the first place." 749 F.Supp. at 85. The flaw in this, the government asserts, is that Gidron's claim to proceeds from the Thomas/Holyfield prizefight purse as assignee was inchoate and, as such, subordinate to federal tax liens. We agree with the government's position.
 
 
 14
 Section 6321 of the Internal Revenue Code provides that
 
 
 15
 [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
 
 
 16
 26 U.S.C. § 6321 (1988). The language of section 6321 is broad, revealing a congressional intent to reach "every interest in property that a taxpayer might have." United States v. National Bank of Commerce, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).
 
 
 17
 A federal tax lien, described as a "secret lien," see United States v. Security Trust & Savings Bank, 340 U.S. 47, 53, 71 S.Ct. 111, 114, 95 L.Ed. 53 (1950) (Jackson, J., concurring) (citation omitted), is effective upon assessment against all persons, even in the absence of recordation of the lien. See Rice Investment Co. v. United States, 625 F.2d 565, 568 (5th Cir.1980). However, under 26 U.S.C. § 6323(a), certain persons are protected against unrecorded federal tax liens. Section 6323(a) provides:
 
 
 18
 The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirement of subsection (f) has been filed by the Secretary.
 
 
 19
 Only those persons specifically listed in the statute are entitled to priority over unrecorded federal tax liens. See 14 Mertens, Law of Federal Income Taxation § 15A.03, at 15-16 (1991).
 
 
 20
 During oral argument, Gidron contended that he is a "judgment lien creditor" by virtue of the stipulation of settlement dated December 11, 1985, which he argues was a judgment entered in the Bronx County court. If Gidron were a "judgment lien creditor," and his status as such was acquired prior to December 5 and 8, 1988, when the government recorded its federal tax liens, Gidron would be entitled to priority over the government.
 
 
 21
 A "judgment lien creditor," undefined by statute, is described in treasury regulations as
 
 
 22
 a person who has obtained a valid judgment ... for the recovery of ... a certain sum of money.... [and as] a person who has perfected a lien under the judgment on the property involved.
 
 
 23
 26 C.F.R. § 301.6323(h)-1(g). "In determining ... whether a judgment creditor's lien is perfected ..., we look first to the local law setting forth the lien procedure and its legal consequences." Hartford Provision Co. v. United States, 579 F.2d 7, 9 (2d Cir.1978).
 
 
 24
 Under New York law, a judgment creditor becomes a "judgment lien creditor" as to personal property only after execution is delivered to the sheriff. See N.Y.Civ.Prac.L. & R. § 5202(a) (McKinney 1978); see also Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc., 512 F.2d 605, 607 n. 2 (2d Cir.1975). Since there is no evidence that the stipulation of settlement was reduced to and docketed as a judgment, see 749 F.Supp. at 81 n. 1, and there is no evidence of the delivery of a judgment execution to the sheriff, clearly, under the New York requirements, Gidron cannot be a judgment lien creditor. See Lerner v. United States, 637 F.Supp. 679, 680 (S.D.N.Y.1986); In re Estate of Robbins, 74 Misc.2d 793, 795, 346 N.Y.S.2d 86, 90 (Sur.Ct.1973) ("As to personal property, docketing of a judgment [alone] does not create a lien; such a lien upon personal property comes into being only when execution is issued to the proper officer.").
 
 
 25
 For all persons who are not specifically listed in section 6323, priority as a lienor is determined by the common law rule of "first in time is the first in right." United States v. City of New Britain, 347 U.S. 81, 87-88, 74 S.Ct. 367, 371-372, 98 L.Ed. 520 (1954). Under that rule, a federal tax lien takes priority over competing liens unless the competing lien was choate, or fully established, prior to the attachment of the federal lien. See id. at 86, 74 S.Ct. at 370. Not only does a lienor's interest have to be first chronologically, but the interest must be choate to defeat the federal tax lien. A choate lien is one in which the identity of the lienor, the property subject to the lien and the amount of the lien are established. Id. at 84, 74 S.Ct. at 369. A lien that is "choate" has been described as a lien that is "specific and perfected" and for which "nothing more [need] be done." United States v. Equitable Life Assurance Society, 384 U.S. 323, 327-28, 86 S.Ct. 1561, 1563-64, 16 L.Ed.2d 593 (1966) (citation omitted).
 
 
 26
 Under the federal revenue statute, federal law determines the rights of priority among competing lienors; however, state law controls in determining the nature of a taxpayer's interest in property. SEC v. Levine, 881 F.2d 1165, 1175 (2d Cir.1989); see also National Bank of Commerce, 472 U.S. at 722, 105 S.Ct. at 2925; Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). "[W]hether the [federal] tax lien has attached depends on the state law question of ownership, since the lien can only attach to property that the taxpayer owns." United States v. Fontana, 528 F.Supp. 137, 143 (S.D.N.Y.1981). "This follows from the fact that the federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.' " National Bank of Commerce, 472 U.S. at 722, 105 S.Ct. at 2925 (quoting United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)). Thus, we must look initially to the nature of Thomas' interest in the property under New York law.
 
 
 27
 Thomas purported to assign to Gidron a portion of his interest in income to be earned some time in the future. Under New York law, income to be earned in the future may be assigned. "[T]he right to receive [such income], though liable to be defeated, is vested, and, in the absence of [a statutory restriction], ... is assignable." 6 N.Y.Jur.2d Assignments § 23, at 260 (1980). However, like the assignment of accounts receivable where the assignor has no existing contract under which such accounts are to arise, the assignment of a right to receive income contingent upon the occurrence of a future event, does not convey a present interest to the assignee. See Central State Bank v. New York, 73 Misc.2d 128, 129, 341 N.Y.S.2d 322, 324 (Ct.Cl.1973); see also Stathos v. Murphy, 26 A.D.2d 500, 503, 276 N.Y.S.2d 727, 730 (1st Dep't 1966) ("There is no doubt that the assignment of a truly future ... interest does not work a present transfer of property. It does not because it cannot; no property yet exists."), aff'd, 19 N.Y.2d 883, 227 N.E.2d 880, 281 N.Y.S.2d 81 (1967). Rather, the rights that Gidron acquired, contingent upon the occurrence of a prizefight at some unspecified time in the future, were "truly future interests." See In re Estate of Rosenberg, 62 Misc.2d 12, 17, 308 N.Y.S.2d 51, 58 (Sur.Ct.1970) ("An assignment of a future 'contingent' interest ... is an assignment of a truly future interest, not an assignment of present rights."); see also In re Holt, 28 A.D.2d 201, 205, 284 N.Y.S.2d 208, 212 (3d Dep't 1967) (" 'future rights' ... are those rights which arise in the future; or, more aptly stated in its most precise definition, a right which the assignor does not have at the time of the assignment but which he expects to have under some arrangements he is about to enter." (emphasis in original)). These rights could not ripen into present rights or interests until the occurrence of the third fight. See Central State Bank, 73 Misc.2d at 129, 341 N.Y.S.2d at 324; City of Utica v. Gold Metal Packing Corp., 54 Misc.2d 708, 710, 283 N.Y.S.2d 611, 613 (Sup.Ct.1967) ("The courts recognize equitable assignments of future interests which will create a lien between the parties at the time the property comes into existence"); 6 N.Y.Jur.2d Assignments § 20, at 256 ("the assignment of contingent interests ..., although resting in a mere possibility, is recognized and takes effect when the thing ... assigned comes into existence.").
 
 
 28
 The government's liens attached when the assessments were made in 1987 and 1988, but Gidron only acquired a future interest in the prizefight purses on December 11, 1985 by virtue of his assignment. Cf. United States v. Colby Academy, 524 F.Supp. 931, 934 (E.D.N.Y.1981). At that time, Gidron's interest was inchoate. Although the identity of the lienor was known and the amount of the lien was established, the property subject to the lien was not in existence at the time the government's lien arose. See Lerner, 637 F.Supp. at 681 (court held that "lien remains inchoate until the underlying debt becomes due." (citation omitted)); MDC Leasing Corp. v. New York Property Ins. Underwriting Ass'n, 450 F.Supp. 179, 181 (S.D.N.Y.1978), aff'd mem., 603 F.2d 213 (2d Cir.1979). Therefore, under applicable federal law, the government had priority over Gidron. See United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1968).
 
 
 29
 Gidron contends that the district court erred in determining that Jones' claim to interpleader funds had priority over his claim because his stipulation of settlement, dated December 11, 1985, was prior in time to Jones' judgment of filiation and order for support. Noting that "[u]nder New York law, the legislature has given priority to child support orders over wage assignments and garnishments," the district court found Jones' claim to have priority over Gidron's claim. 749 F.Supp. at 85.
 
 
 30
 Gidron argues that Thomas' assignment to him is not a wage assignment or garnishment and, therefore, the district court erred in subordinating his claim to Jones' claim. He contends that the transaction constituted a valid present transfer of property rights from Thomas to King to be paid to Gidron, thereby divesting Thomas of any rights in the specified prizefight purses. Gidron's defeat in his fight against the government, however, precludes him from arguing (successfully) in his fight against Jones that he was assigned a present interest in 1985.
 
 
 31
 There is another reason why Gidron's argument must fail. Section 5241 of the New York Civil Practice Laws and Rules, entitled "Income execution for support enforcement," provides that a "levy pursuant to this section or an income deduction order pursuant to section 5242 of this chapter shall take priority over any other assignment, levy or process." N.Y.Civ.Prac.L. & R. § 5241(h) (McKinney Supp.1991) (emphasis added); see also id. § 5242(c) (McKinney Supp.1991). "[T]he intent and purpose of the[se] enforcement statutes is to enable a former spouse to enforce a support judgment against 'income,' in a priority basis over the income execution of a normal judgment creditor." Dawson v. Krolikowski, 140 Misc.2d 343, 346, 530 N.Y.S.2d 931, 934 (Sup.Ct.1988); see also Long Island Trust Co. v. United States Postal Serv., 647 F.2d 336, 339 (2d Cir.1981). Under the statute, "income" includes "any earned, unearned, taxable or non-taxable income." N.Y.Civ.Prac.L. & R. § 5241(a)(6).
 
 
 32
 Clearly, the monies to be paid to Thomas by DKP for Thomas' participation in the boxing match fall within the meaning of "income" under section 5241. Therefore, it is immaterial whether the assignment embodied in the stipulation of settlement is called a wage assignment or any other kind of assignment. The statute gives priority to orders for support over "any other assignment." Id. § 5241(h). It subordinates all normal judgment creditors to the former spouse who has a support judgment. See id. Thus, even if Gidron were considered to be a judgment creditor, his claim must be found to be subordinate to Jones' judgment of filiation and order for child support.
 
 CONCLUSION
 
 33
 The judgment of the district court is reversed insofar as it establishes the priority between Gidron's claim over the government's federal tax liens. The portion of the judgment establishing the priority of the claim of Althea Jones over the claims of both the government and Gidron is affirmed. The order of priority of claims to the interpleaded funds is fixed as follows: 1) child support (Jones); 2) federal tax liens (government); and 3) claim based on stipulation (Gidron).