AMERICAN TRUST, Plaintiff,

v.

AMERICAN COMMUNITY MUTUAL
INSURANCE COMPANY,
Defendant,

AMERICAN COMMUNITY MUTUAL
INSURANCE COMPANY,
Plaintiff,

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant–Appellee,

Edgar F. Bradley, II, Defendant–Appellant,

Richard A. Davidson, Defendant.

No. 97–3385.

United States Court of Appeals,
Sixth Circuit.

Argued March 18, 1998.

Decided April 27, 1998.

Richard John Donovan (argued and briefed), Richard J. Donovan & Associates, Worthington, OH, for Defendant–Appellant.

Michael W. Davis, U.S. Department of Justice, Tax Division, Washington, DC, Jan M. Holtzman, Asst. U.S. Attorney, cincinnati, OH, William S. Estabrook (briefed), Pamela C. Berry (argued and briefed), U.S. Department of Justice, Appellate Section, Tax Division, Washington, DC, for Defendant–Appellee.

Before: KENNEDY and SILER, Circuit Judges; COHN, District Judge.*

## OPINION

KENNEDY, Circuit Judge.

Defendant Edgar F. Bradley, II, appeals the District Court's order granting summary judgment in favor of the United States in these consolidated breach of contract and interpleader actions. In its complaint in the interpleader action, the United States sought enforcement of tax liens against insurance sales commissions attributable to defendant. The District Court held that the Government had valid tax liens under 26 U.S.C. § 6321 and that these liens gave the United States the first priority claim to the commissions. On appeal, defendant contends he is entitled to the exemptions allowed taxpayers during administrative levy proceedings under 26 U.S.C. § 6331. For the following reasons, we affirm the District Court.

## I. Facts

The facts underlying this case are undisputed. Between 1988 and 1992 Bradley, an agent authorized to sell insurance policies for American Community Mutual Insurance Company (hereinafter, "American Community"), entered into agreements with three other American Community insurance agents. Under these agreements, the three other agents assigned to Bradley their rights to the commissions that resulted from their sales of American Community policies. On December 4, 1992, Bradley assigned the rights to all of the commissions, including his own, to a trust identified as "American AMB 06044 Irrevocable Trust" (the "Trust"). From this date, American Community paid all monthly commissions directly to the Trust.[1]

On August 9, 1993, the Internal Revenue Service ("IRS") issued assessments against Bradley for deficiencies in income tax for his 1987, 1988, and 1989 taxable years. In October of 1993, the IRS, claiming a lien for tax deficiencies, penalties, and statutory additions totaling $85,617.55, issued a Notice of Levy to American Community. Through this notice, the IRS asked American Community to pay over to the IRS all property or rights to property belonging to Bradley. American Community responded by stating that it had no funds in its possession payable to Bradley, and that all commissions had been assigned to the Trust. In April of 1994, the IRS issued a second Notice of Levy to American Community, claiming a lien for taxes and statutory additions owed by Bradley in the

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The District Court found that the Trust, which named the four agents as its beneficiaries, was created to evade income taxation.

amount of $90,406.74. American Community continued to pay Bradley's commissions, as well as the commissions assigned to him by the other agents, to the Trust, until June of 1994, when the IRS issued a Final Demand to American Community for payment of all "property, rights to property, money, credits, and bank deposits ... to the credit of, belonging to, or owned by [Bradley]" and in American Community's possession or owed to Bradley as of the first Notice of Levy.

The final payment to the Trust represented commissions earned through March 31, 1994. Upon receiving this Final Demand, American Community withheld payment of additional commissions to the Trust. The insurance agents and representatives of the Trust told American Community that the liens asserted by the IRS were invalid. Rather than comply with the Final Demand to pay the commissions to the IRS, American Community withheld the commissions from both claimants, and eventually deposited them, along with interest earned thereon, in the registry of the Clerk of the Court of Common Pleas in Hamilton County, Ohio.

This case embodies two separate actions that were filed in the Court of Common Pleas in Hamilton County, Ohio. First, the Trust brought a breach of contract claim against American Community, asserting that American Community had a contractual obligation to pay the commissions to the Trust. Second, American Community filed an action in interpleader to determine ownership of accumulated commissions. The defendants named in the second action included the Trust, the IRS, Bradley, and the other agents. The Court of Common Pleas consolidated the cases, and the United States removed the consolidated case to the United States District Court for the Southern District of Ohio. The funds in question were transferred to the registry of the Clerk of the District Court.

In the District Court, American Community moved for summary judgment on the breach of contract claim, and the United States moved for summary judgment in the interpleader action, asserting that, by virtue of its tax lien, the United States had a superior claim to the funds in dispute. On March 11, 1997, the District Court granted summary judgment in favor of American Community on the contract claim and the United States on the interpleader action.

## II. Discussion

■ We review de novo the District Court's grant of summary judgment in favor of the Government. *E.g., Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996). The facts underlying this case are undisputed and Bradley's appeal raises a single question of law: whether an exemption from levy that is listed in Internal Revenue Code ("I.R.C.") § 6334, 26 U.S.C. § 6334, applies when the IRS seeks enforcement of a tax lien in an interpleader action.

To answer this question we look to the relationship of several sections of the Internal Revenue Code. Section 6321 of the I.R.C. provides that the amount of unpaid taxes, interest, and penalties that any person neglects or refuses to pay "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The Supreme Court has stated that "[t]he statutory language 'all property and rights to property,' appearing in § 6321 ... is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985). This tax lien arises at the time the unpaid taxes are assessed and persists until the liability for the amount assessed is satisfied. 26 U.S.C. § 6322.

The Government has several separate procedures through which it can recover the tax deficiency. As the Supreme Court explained in *United States v. Rodgers,* 461 U.S. 677, 682, 103 S.Ct. 2132, 2136–37, 76 L.Ed.2d 236 (1983), the Government is authorized under 26 U.S.C. § 7403 to file a lien-foreclosure suit in a district court of the United States to enforce the tax lien. In other cases, the Government may decide simply to sue for the amount of unpaid taxes, "and, on getting a judgment, exercise the usual rights of a judgment creditor." 461 U.S. at 682, 103 S.Ct. at 2136–37 (citing 26 U.S.C. §§ 6502(a), 7401,

7402(a)). Section 6331 of the I.R.C., 26 U.S.C. § 6331, provides an additional, administrative avenue for recovery:

> If any person liable to pay any tax neglects or refuses to pay same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C. § 6331(a). As the Court explained, "[t]he common purpose of this formidable arsenal of collection tools is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." 461 U.S. at 683, 103 S.Ct. at 2137.

▆▆▆ The "[a]dministrative levy, unlike an ordinary lawsuit, and unlike the procedure described in § 7403, does not require any judicial intervention, and it is up to the taxpayer, if he so chooses, to go to court if he claims that the assessed amount was not legally owing." *Rodgers*, 461 U.S. at 682–83, 103 S.Ct. at 2136–37. Third parties who may have been aggrieved by an administrative levy against a recalcitrant taxpayer also must wait until a post-seizure proceeding to assert their rights to disputed property. *See National Bank of Commerce*, 472 U.S. at 731, 105 S.Ct. at 2930. "In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the government against diversion or loss while such claims are being resolved." *Id.* at 721, 105 S.Ct. at 2924–25. In sum, § 6331 provides the Government with a mechanism to secure expeditiously property that might satisfy tax deficiencies and postpones the resolution of property rights until after the seizure. *See id.*

Although the Code authorizes the IRS to execute an administrative levy without prior judicial approval, it also provides some pro-

tection to the taxpayer. Internal Revenue Code § 6334, 26 U.S.C. § 6334, exempts specific types of property from attachment by levy. Most relevant to the instant case, § 6334(a)(9) provides that the following income is exempt from levy:

> Any amount payable to or received by an individual as wages or salary for personal services, or as income derived from other sources, during any period, to the extent that the total of such amounts payable to or received by him during such period does not exceed the amount determined under subsection (d).

This exemption prevents the IRS from seizing all of a taxpayer's paycheck through a purely administrative proceeding, and allows the taxpayer to retain from his wages or salary an amount that is determined in relation to the sum of the standard personal income tax deduction and the taxpayer's aggregate number of personal income tax exemptions. *See* 26 U.S.C. § 6334(d).

In the instant case, the IRS first selected the administrative levy from its arsenal of collection tools and demanded that American Community pay over any of Bradley's property or rights to property that it had in its possession. Instead of complying, American Community filed an interpleader action to resolve the competing claims to the withheld commissions. After removing the interpleader to the District Court, the Government successfully filed a claim for enforcement of its tax lien against the accumulated commissions. Bradley now contends that the judgment in favor of the United States should have been reduced by the amount of money that, pursuant to § 6334(a)(9), he would have been entitled to claim as exempt from the original levy. In response, the United States argues that the judicial enforcement of a lien is independent of and distinct from an administrative levy, and that a valid tax lien may attach property that is exempted from levy.

We have yet to decide whether the Government may enforce a tax lien created by 26 U.S.C. § 6321 against property that § 6334 would exempt from levy.[2] The United States

---

**2.** In *Woods v. Simpson*, 46 F.3d 21 (6th Cir. 1995), we considered a case with the same procedural history as the instant case: the IRS sought to enforce a tax lien against interpleaded

Courts of Appeals that have considered the relationship between administrative levies and tax liens have recognized that a tax lien under § 6321 can attach to property that would be exempt from a § 6331 administrative levy. In *United States v. Barbier*, 896 F.2d 377 (9th Cir.1990), the Ninth Circuit considered an appeal from a bankruptcy proceeding in which debtor-taxpayers argued that § 6334 prohibited the attachment of a federal tax lien on property that was exempt from an administrative levy. The court rejected the taxpayers' argument, holding that "for the purposes of the Barbiers' Chapter 13 plan, the IRS's claim against the Barbiers for their income tax deficiencies, including interest and penalties, may be secured by a lien on property exempt under section 6334(a)." 896 F.2d at 378. It reasoned that restricting the scope of a tax lien's reach would be inconsistent with both Supreme Court precedent and the statutory purpose of promoting tax collection. *Id.* at 378–79 (citing *National Bank of Commerce*, 472 U.S. at 720–21, 105 S.Ct. at 2924–25). It also reasoned that "[t]he IRS's levying power is limited because a levy is an immediate seizure not requiring judicial intervention." *Id.* at 379. The court, however, confined its opinion to the determination of the scope of a tax lien in a bankruptcy proceeding, stating in a footnote that they "need not consider here whether exempt assets are subject to judicial foreclosure and express no view on that question." *Id.* at 380 n. 3.

The Seventh Circuit has also considered, in a case arising out of bankruptcy, whether a tax lien can reach property exempt from levy. *See In re Voelker*, 42 F.3d 1050 (7th Cir.1994). Relying heavily on the Ninth Circuit's analysis in *Barbier*, the Seventh Circuit held that "[t]he language of the statute unambiguously shows that the federal tax lien attaches to all of a debtor's property, without exception. Thus, we agree with the district court, and the majority of the other courts

addressing the issue, that the lien attached to Voelker's [exempt personal property]." \$42 F.3d at 1051.

Finally, the Fifth Circuit has considered this issue, again in the context of a bankruptcy proceedings, in *Sills v. United States (In re Sills)*, 82 F.3d 111 (5th Cir.1996). In *Sills*, the taxpayers purchased a house with workers' compensation proceeds. In the bankruptcy proceeding, they sought to insulate that house from a tax lien, arguing that property purchased with workers' compensation benefits is exempt from levy under 26 U.S.C. § 6334(a)(7). The Fifth Circuit rejected their arguments and held that tax liens may reach property exempt from levy. Although the court did not decide if the taxpayers' house actually qualified under § 6334(a)(7), it reasoned as follows:

> Even if the Sills' house were exempt from levy, the tax lien still may be valid and enforceable. For example, the IRS may enforce the lien by foreclosure action under I.R.C. § 7403; it may seek to have its lien satisfied in proceeding brought by third parties, in which the IRS is brought pursuant to 28 U.S.C. § 2410; or it may exercise redemption rights provided by I.R.C. § 7425(d) if another party forecloses on the property.

82 F.3d at 114. This reasoning emphasizes the myriad of mechanisms that the IRS can employ to collect taxes through the enforcement of tax liens that reach property that would be exempt from attachment by levy.

Bradley relies heavily on *Don King Productions, Inc. v. Thomas*, 749 F.Supp. 79 (S.D.N.Y.1990), *rev'd in part*, 945 F.2d 529 (2d Cir.1991), a case in which the court reached the opposite conclusion. There, the District Court held, in an interpleader action, that "a lien cannot attach to child support monies that are exempt from levy." 749 F.Supp. at 84. The court based its decision

funds that the taxpayer inherited, and the taxpayer's former wife argued that her child support claims were exempted under § 6334(a)(8) from the federal tax lien. In considering their claims, we explicitly declined to reach the question before us today: "Given our conclusion that 26 U.S.C. § 6334(a)(8) does not exempt an inheritance from levy, we need not decide whether 26

U.S.C. § 6334 also operates to exempt certain property from a 26 U.S.C. § 6321 federal lien for taxes." 46 F.3d at 24. Thus, despite his assertions to the contrary, *Woods* does not provide any support for Bradley's argument that exemptions under § 6334 should provide him some protection from federal tax liens.

purely on policy grounds, reasoning that "exemption allows the delinquent taxpayer to fulfil his court ordered obligation to support his children." *Id.*

Although Bradley acknowledges that exemptions under § 6334 would not apply if the United States had sought enforcement of its tax lien by instituting judicial proceedings under § 7403, he argues that this case is different because the United States was responding to an interpleader action that resulted from its levies. He asserts that it is unfair to allow third parties to negate taxpayers' claims to exemptions from levy under § 6334 whenever third parties refuse to surrender property that is the object of an IRS levy and then bring an interpleader action to determine the priority of rights to that property. Appellant's argument can be distilled to the claim that once the IRS files a levy, the taxpayer is entitled to claim exemptions under § 6334, unless it is the IRS that initiates the action for judgment on its lien under § 7304.

Bradley's argument conflicts with the statutory scheme of the Internal Revenue Code, which has created a "number of distinct enforcement tools available to the United States for the collection of delinquent taxes." *Rodgers,* 461 U.S. at 682, 103 S.Ct. at 2136–37. An administrative levy, one such tool, is a "provisional remedy," without judicial intervention, in which the Government seeks to secure quickly and inexpensively property to satisfy a tax deficiency. *See National Bank of Commerce,* 472 U.S. at 720–21, 105 S.Ct. at 2924–25. Although administrative recovery may be relatively quick and inexpensive, the IRS's powers to levy are limited by the exceptions in 26 U.S.C. § 6334. These exemptions make sense in an administrative proceeding, where no court has found that taxes are even due. Enforcement of a tax lien is another distinct mechanism for tax collection. Such a proceeding has different characteristics: it requires judicial intervention, but the lien created by 26 U.S.C. § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *National Bank of Commerce,* 472 U.S. at 719–20, 105 S.Ct. at 2923–24. The statute exempts certain property from a levy but not from a lien, and we decline to alter this allocation.

Bradley's argument also relies heavily on the order in which the Government uses its distinct enforcement tools. In this case, although the Government first sought to recover tax deficiencies by administrative levy, the interpleader action changed the nature of the proceedings. The parties were then in court, and the remedy the United States sought was no longer "provisional" in nature. Bradley fails to explain why it should make a difference whether the United States seeks to enforce a tax lien in a proceeding that it initiated or whether it seeks enforcement of the lien in an action that was initiated by another party. The scope of the lien remains the same in either instance. If we were to adopt Bradley's arguments, we would create the odd situation where a tax lien created under § 6321 would reach all of Bradley's commissions if the Government had immediately sought enforcement by filing suit under § 7403, but the same lien would be subject to certain exemptions if the Government sought judicial enforcement of the lien after the quicker and less expensive levy procedure had failed and led to an interpleader. To do so would not only re-write the broad language of § 6321, it would also lessen the incentive of taxpayers to comply with an administrative levy. This would conflict with "the policy inherent in the tax statutes in favor of the prompt and certain collection of delinquent taxes." *Id.* at 694, 103 S.Ct. at 2142–43.

## III. Conclusion

For the foregoing reasons we affirm the District Court's order granting summary judgment in favor of the United States.