First Federal Savings and Loan Association of Rochester, Formerly Fair City Savings & Loan Association of Syracuse, Plaintiff, v Robert N. Brown et al., Defendants, Barbara B. Brown, Respondent, and Virginia M. Dellinger, Doing Business as Dellinger Art and Antiques, Appellant.

Fourth Department, December 23, 1980

### APPEARANCES OF COUNSEL

*Harold F. Simons* for appellant.

*Smith, Sovik, Kendrick, McAuliffe & Schwarzer, P. C. (Kevin R. McAuliffe* of counsel), for respondent.

### OPINION OF THE COURT

Callahan, J.

We are again called upon to resolve a dispute concerning the homestead exemption under CPLR 5206 (subd [a]). Both parties rely upon our pronouncement in *Wyoming County Bank & Trust Co. v Kiley* (75 AD2d 477) and utilize language therefrom in support of their respective positions. On this appeal, we are confronted with competing claims to surplus moneys from a foreclosure proceeding by the bankrupt owner versus a judgment creditor. The question

presented for our determination is whether the "homestead exemption" of CPLR 5206 applies to surplus moneys arising out of the foreclosure sale of real property held as tenants by the entirety.

Robert N. Brown and Barbara Bex Brown, his wife, were the owners of real property in Syracuse, New York. On September 19, 1978, Virginia M. Dellinger, doing business as Dellinger Art and Antiques (Dellinger), took a judgment for $1,710.15 against the Browns which became a lien against their real property. Then, in September, 1979, the First Federal Savings and Loan Association of Rochester, which held the mortgage on the Brown premises, instituted a foreclosure action. The property was sold pursuant to a judgment of foreclosure on February 28, 1980 resulting in an $8,667.02 surplus; the proceeds of sale were deposited with the Commissioner of Finance pursuant to RPAPL 1441. On March 20, 1980 Barbara Bex Brown filed a notice of claim to the surplus moneys claiming that she was "the owner of the equity in the property foreclosed (her homestead) all of which is exempt from the application to the satisfaction of money judgments pursuant to CPLR 5206." Thereafter, on April 3, 1980, Robert N. Brown and Barbara Bex Brown filed voluntary petitions in bankruptcy listing the surplus moneys as assets of the bankrupt and claimed such funds to be exempt. Without specifying his reasons, the trustee in bankruptcy determined that he had "no interest or right to the funds" and forwarded a letter to the Commissioner of Finance to advise him of that fact and "[his] release as Trustee to any interest in the funds."

Barbara Bex Brown, by motion returnable at Special Term, initiated a proceeding pursuant to RPAPL 1361 to (1) confirm the Referee's report of sale and (2) obtain an order directing payment of all surplus funds to her in accordance with her notice of claim previously filed. Dellinger, both in her notice of claim with respect to the surplus money proceedings and appearing in opposition to the motion, claimed a superior right to the surplus moneys by virtue of her judgment lien docketed prior to the foreclosure sale. The court, in a letter to the judgment creditor,

advised that an order was signed releasing the surplus moneys to Robert N. Brown and Barbara Bex Brown. Without making any reference, the court ascertained that inasmuch as the trustee in bankruptcy had abandoned any claim to the funds, then the funds claimed by Barbara Bex Brown to be exempt in those proceedings became hers by virtue of the trustee's acknowledgment of that exemption. The order, the subject of this appeal, recited "[i]t further appearing that Barbara Bex Brown is the owner of the equity of redemption (her homestead), all of which is exempt from the application to the satisfaction of money judgments pursuant to CPLR 5206". The court thereupon confirmed the report of sale and directed the Onondaga County Clerk to pay over all surplus moneys to Barbara Bex Brown pursuant to RPAPL 1361. It is from this order that Dellinger, the judgment creditor, appeals.

At the outset, the court erroneously concluded that inasmuch as the trustee in bankruptcy had relinquished any interest or right to the funds claimed as exempt in the bankruptcy proceeding, then these funds were likewise exempt (as homestead) under CPLR 5206 (subd [a]). Where a bankruptcy trustee abandons an asset, he is to be treated as never having had title to it; the abandonment relates back so that the title stands as if no assignment had been made *(Brown v O'Keefe*, 300 US 598, 602; *Rosenblum v Dingfelder*, 111 F2d 406). Thus, upon the bankruptcy trustee's abandonment of the surplus moneys in the instant case, title related back to the time just prior to the institution of the bankruptcy proceedings when the surplus moneys were deposited with the Commissioner of Finance, subject to the rights of any valid claims thereto.

The Browns maintain that, as owners of realty as tenants by the entirety, any surplus proceeds from a foreclosure sale constructively remain real property entitled to the homestead shelter. Further, they claim that upon filing the petition in bankruptcy, this asset automatically vested in the trustee and that upon his abandonment, the funds reverted to them as after-acquired property. The judgment creditor, Dellinger, on the other hand, contends that any funds in a surplus money proceeding are personal property not subject to the "homestead exemption".

Our decision in *Wyoming County Bank & Trust Co. v Kiley* (75 AD2d 477, *supra)* concerned the rights of a mortgage-secured creditor and has no application to these facts. We held therein that when a mortgage-secured creditor commences an equitable action to foreclose its mortgage, the action does not result in a "money judgment"; and therefore the homestead exemption of section 5206 (subd [a]) did not exempt the debtor's homestead from a mortgage foreclosure sale. The Browns apparently interpret this to mean that surplus moneys from a foreclosure action remain real property subject to the protection of the homestead provision.

The question whether surplus moneys arising out of a foreclosure sale of real property held as tenants by the entirety become personal property or is constructively real property has been addressed by our courts but has not received consistent treatment. One line of cases tracing its genesis to *Germania Sav. Bank v Jung* (28 Abb NC 81, 82) held that the conversion of real estate into money by foreclosure did not alter the character of the surplus, the fund continuing constructively to be considered real estate and hence the surplus moneys were considered held as tenants by the entirety *(Dunning v Ocean Nat. Bank of City of N. Y.,* 61 NY 497). Recently the two seemingly inconsistent lines of cases were analyzed and the court, relying on the authority of *Hawthorne v Hawthorne* (13 NY2d 82) concluded that surplus money arising out of a foreclosure of real property held by tenants by the entirety becomes personal property *(Mojeski v Siegmann,* 87 Misc 2d 690, affd 57 AD2d 549). Additionally, the *Hawthorne* court approved the holding in *Franklin Sq. Nat. Bank v Schiller* (202 Misc 576) that a fund created by foreclosure of real property becomes personal property *(Hawthorne v Hawthorne, supra,* at p 86). The Third Department, acknowledging the principle that estates by the entirety are recognized only in real property, likewise adopted the *Hawthorne* rationale in holding that surplus moneys resulting from the foreclosure of real property held by mortgagors as tenants by the entirety becomes personal property *(National Bank & Trust Co. of Norwich v Rickard,* 57 AD2d 156). We also agree.

The "homestead exemption" under CPLR 5206 (subd [a]) exempts only "real property" from application to the satisfaction of money judgments. Inasmuch as the surplus money arising out of this foreclosure sale becomes personal property, CPLR 5206 has no application to such funds.

Surplus money realized upon a foreclosure sale is not a general asset of the owner of the equity of redemption but stands in place of the land for all purposes of distribution among persons having vested interests or liens upon the land. Surplus money takes the place of the equity of redemption and only one who had a vested estate or interest in the land sold under foreclosure which was cut off by the foreclosure sale is entitled to share in the surplus money with priority in each creditor determined by the filing date of his lien or judgment (Marks, Maloney and Paperno, Mortgages and Mortgage Foreclosure in New York [rev ed], § 293, p 409). The lien of the judgment attaches to the homestead property as well as to other real estate of the judgment debtor. The exemption of the land comprising the homestead is only an exemption from sale or execution while the premises are occupied by the debtor or his family. While the lien attaches to the property, it remains dormant or in abeyance while premises are occupied as a homestead and becomes active or potential as soon as the homestead right is lost, abandoned or terminated such as in the foreclosure of a purchase-money mortgage.

We stated in *Kiley (supra)* that foreclosure of a mortgage is the legal process for realizing upon the lien whereby the encumbered property is sold under the supervision and control of the court and the proceeds of sale applied to the satisfaction of the mortgage lien. Judgments docketed prior to delivery of a referee's deed are liens on realty that pass to surplus moneys and are payable in order of priority of docketing *(King v Pelkofski,* 34 AD2d 795; *Warwick Sav. Bank v Long Is. Ch. Knights of Columbus Social Serv.,* 253 App Div 276). The whole procedure is designed to assure the conveyance of good title on the foreclosure sale. When the proceeds of the sale suffice to satisfy the mortgage, the subordinate lienors are paid as afore-mentioned and, finally, if there still remains a balance, it goes to the owner.

The Dellinger judgment was a valid lien in the surplus

money proceeding and it was erroneous for the court to ignore this claim. It would have been the better procedure for Special Term upon receiving an application for surplus moneys to refer the matter to a referee to ascertain and report the amounts due subordinate liens or judgments and to determine the priority of those liens (RPAPL 1361, subd 2).

Accordingly, the order of Special Term should be reversed and the matter remitted for further proceedings in accordance with this opinion. It should be noted that inasmuch as this sparse record precludes a proper analysis of what transpired in the bankruptcy proceedings, our resolution should not be construed as foreclosing any right which a debtor may possess within the purview of the bankruptcy code.

DILLON, P. J., SIMONS, HANCOCK, JR. and MOULE, JJ., concur.

Order unanimously reversed, with costs, and matter remitted to Supreme Court, Onondaga County, for further proceedings, in accordance with opinion by CALLAHAN, J.