**In re Mohamed Ismail ELMASRI,
Debtor.**

**Coleen Rupp, Plaintiff,**

v.

**Mohamed Ismail Elmasri, Defendant.**

**Bankruptcy No. 805–88238–619.
Adversary No. 806–369–619.**

United States Bankruptcy Court,
E.D. New York.

May 24, 2007.

Mohamed Ismail Elmasri, Patchogue, NY, pro se.

Heath S Berger, Esq., Steinberg Fineo Berger & Fischoff, PC, Woodbury, NY, Attorney for Coleen Rupp.

Edward Zinker, Esq., Smithtown, NY, Attorney for Donna England.

## MEMORANDUM DECISION

Hon. JOEL B. ROSENTHAL, U.S. Bankruptcy Judge.

Before the Court are several matters all related to one central issue: Whether the above-plaintiff, Coleen Rupp, and intervenor, Donna England, are entitled to receive $50,000 from the net proceeds of the sale of the Debtor's real property, representing the Debtor's homestead exemption, which funds are currently being held by the Chapter 7 Trustee pending further order of this Court.

Procedurally, the following matters are pending: (1) Ms. Rupp's motion to restrain the Debtor's homestead exemption [Doc # 56 in Case No. 805–88238]; (2) the Debtor's motion to vacate the temporary restraint and release the homestead funds to him [Doc # 64 in Case No. 805–88238]; (3) Ms. England's motion objecting to the Debtor's homestead exemption [Doc # 81 in Case No. 805–88238]; (4) the Debtor's cross-motion to dismiss Ms. England's "frivolous and untimely objection" [Doc # 83 in Case No. 805–88238]; (5) Ms. Rupp's motion for summary judgment [Doc # 11 in Adv. Proc. No. 806–8369]; (6) Ms. England's motion to extend time to serve and file a third party summons and complaint [Doc # 12 in Adv. Proc. No. 806–8369].

The Court held a hearing on all of the above matters on May 7, 2007 at which time the Court permitted the parties to file supplemental papers on or before May 14, 2007 and the matter was taken under reserve. This Memorandum Decision constitutes this Court's findings of fact and con-

clusions of law under Fed. R. Bankr.P. 7052(a). A brief recitation of the relevant facts is necessary to an understanding of this Court's findings and conclusions.

### Background

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 10, 2005—his sixth bankruptcy filing since January 2000. The Section 341(a) meeting of creditors was scheduled for November 22, 2005 and R. Kenneth Barnard was appointed as Chapter 7 trustee (the "Trustee") of the case.

On April 13, 2006, the Debtor filed an adversary proceeding against Donna England seeking a determination that certain fees owed to Ms. England as law guardian in the Debtor's state court matrimonial action, were dischargeable under Bankruptcy Code Section 523(a)(5) and/or (a)(15). (See Adv. Proc. No. 806–8171). On July 28, 2006, Judge Cyganowski entered a judgment in favor of Ms. England declaring that two state court judgments in the amounts of $8,771.14 and $4,130, respectively, issued to Ms. England in the matrimonial action are non-dischargeable pursuant to Section 523(a)(5) [Doc # 22 in Adv. Proc. No. 806–8171]. The July 28th judgment was not appealed and is a final judgment.

The Debtor also filed an adversary proceeding against his ex-wife, Coleen Rupp, seeking a determination that certain of his obligations to her were dischargeable under Bankruptcy Code Section 523(a)(5) and/or (a)(15). (See Adv. Proc. No. 806–8364). On January 3, 2007, Judge Cyganowski entered a judgment in favor of Ms. Rupp declaring that a state court judgment held by Ms. Rupp against the Debtor in the amount of $61,931.54 is non-dis-

chargeable under Bankruptcy Code Section 523(a)(5) [Doc # 7 in Adv. Proc. No. 806–8362]. The January 3rd judgment was not appealed and is a final judgment.

In the meantime, in June, 2006, the Trustee took steps to sell the Debtor's real property located at 41 Tremont Avenue, Patchogue, New York (the "Property"), at an auction sale. On August 10, 2006, Judge Cyganowski signed an Order confirming the auctioneer's sale of the Property to Mr. Reem D. Dajani for $300,000.[1] The August 10th Order, provided that "to the extent that the Debtor and the Buyer request in writing that the Debtor's homestead exemption be allowed to be used as a credit toward the payment of Purchase Price, the Trustee shall be allowed, but not required, to allow the Debtor's use of the claimed homestead exemption for such purposes, provided, however that in that event the Purchase Price shall be reduced by the sum of $50,000.00 and the Debtor shall be deemed to have waived his right and claim to a homestead exemption from the sale proceeds …" (See Doc # 55 in Case No. 805–88238).

Prior to the closing, Ms. Rupp moved by order to show cause seeking to restrain the Trustee from distributing to the Debtor his $50,000 homestead exemption from the net proceeds of the Trustee's sale. Ms. Rupp further sought an order directing the Trustee to distribute the funds to her in satisfaction of her non-dischargeable child support judgment. On August 29, 2006, Judge Cyganowski ordered that the Debtor's homestead exemption be held in escrow by the trustee (or his designee) and not be released to the Debtor [Doc # 60 in Case No. 805–88238]. That restraint re-

---

1. Mr. Dajani is the Debtor's brother-in-law. Prior to the auction sale, the Debtor and Mr. Dajani sought to use the Debtor's $50,000 homestead exemption to "credit bid" at the auction. This request was denied in Judge Cyganowski's Order, dated July 28, 2006 [Doc # 52 in Case No. 805–88238].

mains in place today. The August 29th Order provided that "in view of this relief having been granted, the Court hereby amends its August 10, 2006, Order so as to expunge that part of the Order that allows the Trustee to permit the Debtor to use his claimed homestead exemption for purposes of crediting the same toward the payment of the purchase price . . ."

On September 11, 2006, Ms. Rupp filed an adversary proceeding against the Debtor seeking a declaratory judgment that the homestead exemption does not apply to enforcement of child support arrears and requiring the Trustee to turnover to Ms. Rupp the $50,000 homestead funds sufficient to satisfy the obligations to Ms. Rupp. On March 19, 2007, Ms. Rupp filed a motion for summary judgment and that matter is currently before the Court.

On October 11, 2006, Ms. England moved to intervene in the action brought against the Debtor by Ms. Rupp and asserted a claim to the homestead funds. By Order, dated January 3, 2007, Judge Cyganowski granted the motion to intervene and directed Ms. England's counsel to serve and file a third-party complaint on or before January 12, 2007. According to Ms. England's counsel, the third-party complaint was served before the January 12th deadline. However, due to "oversight," counsel never obtained a summons and never filed the complaint with the Court. This has necessitated Ms. England's motion, currently before the Court, to extend time to file the third-party summons and complaint.

In addition to seeking to intervene in the adversary proceeding, Ms. England also filed a motion objecting to the Debtor's homestead exemption in its entirety, or alternatively, seeking to reduce it to the $10,000 limit in effect prior to August 30,

2005. At the May 7th hearing, counsel for Ms. England clarified that she does not seek to deny the Debtor his homestead exemption entirely, but rather just as it applies to her, and presumably, as to Ms. Rupp.

In response to this Court's invitation at the May 7th hearing on these matters, the parties filed the following supplemental documents: (1) supplemental affirmation by Ms. Rupp in support of her motion for summary judgment, (2) memorandum of law by the Debtor in support of his entitlement to the homestead exemption, and (3) joint statement by counsel for Ms. Rupp and counsel for Ms. England stating that if they were successful in reaching the Debtor's homestead exemption, they would share the funds between them on a pro rata basis.

### Discussion

█ Section 522(c) of the Bankruptcy Code, in effect on the date of the Debtor's bankruptcy filing, provides that:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in paragraph section 523(a)(1) or 523(a)(5) of this title; [or]

(2) a debt secured by a lien that is—

(A) (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; . . .

11 U.S.C. § 522(c) (2005).[2]

Although the words of Section 522(c)(1), at first blush may seem plain on their face,

2. Because the filing of this petition pre-dates the effectiveness of the Bankruptcy Abuse Pre-

the manner in which the statute should be applied, if at all, is less than clear. The Debtor argues that because New York has "opted out" of the federal exemption scheme, Section 522(c)(1) does not apply. *See* 11 U.S.C. 522(b)(2)(A); N.Y. Civ. Prac. L. & R. 5206 (McKinney 1997 & Supp. 2006). The Fifth Circuit, in *Davis v. Davis (In re Davis)*, 170 F.3d 475 (5th Cir.), *cert. denied*, 528 U.S. 822, 120 S.Ct. 67, 145 L.Ed.2d 57 (1999), in an *en banc* decision, gives an in-depth analysis of Section 522(c) and its relation to state law. In *Davis*, the former wife of a Chapter 11 individual debtor sought to seize and sell the debtor's homestead in order to satisfy a Section 523(a)(5) non-dischargeable support judgment owed to her. The bankruptcy and district courts both denied the former wife the relief she requested, and found that Section 522(c)(1) *does not* preempt Texas law which exempted the debtor's homestead from attachment, execution or seizure. Originally, the Fifth Circuit reversed the district court and found that Section 522(c)(1) *does* preempt Texas law. *See Davis v. Davis (In re Davis)*, 105 F.3d 1017 (5th Cir.1997). Ultimately, however, the Fifth Circuit reversed itself *en banc* and upheld the holdings of the bankruptcy and district courts. The Fifth Circuit held, in sum, that Section 522(c)(1): (a) *does not* preempt state law; (b) does not provide a means for *execution* against exempt property; but rather, it (c) merely permits a Section 523(a)(5) judgment creditor to proceed against property after bankruptcy based on the rights and remedies they would have had under state law if bankruptcy had not been filed. *See Davis v. Davis (In re Davis)*, 170 F.3d 475 (5th Cir.), *cert. denied*, 528 U.S. 822, 120 S.Ct. 67, 145 L.Ed.2d 57 (1999). *But cf. Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir.1999)

(finding bankruptcy code preempts state exemption scheme).

This Court is persuaded by the *Davis* decision holding that Section 522(c)(1) does not preempt state exemption laws. That does not mean, however, that Section 522(c)(1) is rendered meaningless. Specifically, the *Davis* court stated:

> Although Texas law does not permit the seizure of a homestead for a family support obligation, [the former wife] can still perfect a judgment lien against the property in question, even if it is a homestead. The property is thus liable, although it is immune from seizure while it is a homestead. This is all § 522(c)(1) requires. Section 522(c)(1) assures that the debtor remains ultimately liable, and the property or proceeds from the sale of property may be subject to seizure if the property ever ceases to be the debtor's homestead.

*Davis*, 170 F.3d at 483 (citations omitted).

First, this Court finds that Section 522(c)(1) and (2), read together with Section 522(f)(1)(A)(i), lead to conclusion that where a properly perfected lien against a debtor's homestead supports a Section 523(a)(5) judgment, such a judgment lien should be paid out of the proceeds of a Trustee's sale in the same priority as it would have been paid under state law. This is so even if it means that the debtor's homestead exemption would be impaired. In the case at bar, there has been no order entered voiding any judgment lien by either Ms. Rupp or Ms. England under Section 522(f). Nor does this Court believe that any such order would be appropriate given that Section 522(f)(1)(A)(i) prohibits the avoiding of a judicial lien "that secures a debt-to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in

vention and Consumer Protection Act of 2005,

the new law does not apply in this case.

connection with a separation agreement, divorce decree or other order of a court of record, determined in accordance with State or territorial law by a governmental unit, or property settlement . . ." 11 U.S.C. § 522(f)(1)(A)(i) (2005); *see also In re De-Cosmo*, 163 B.R. 227, 229 (Bankr.W.D.N.Y. 1994) ("Congress could not have intended that Section 522(f) could be used to avoid the lien of a creditor holding a Section 523(a)(5) nondischargeable debt to deprive that creditor of the most effective remedy available under state law to realize on an exempted real property interest and force that creditor to incur significant additional expenses to obtain an alternate remedy so as to be able to take advantage of the clear and important protections provided by Section 522(c)."); *In re Citrone*, 159 B.R. 144, 146 (Bankr.S.D.N.Y.1993) (same). Section 522(c)(2) further supports the notion that if a lien is not avoided, it may be paid out of the proceeds of the homestead.[3]

■ Although there were representations made to the Court at the May 7th hearing that Ms. Rupp and/or Ms. England may have properly perfected liens against the Property, the Court does not have a documentary record sufficient to say with certainty that that is the case. For this reason, the Court merely holds that to the extent Ms. Rupp and/or Ms. England had a valid lien against the Debtor's interest in the Property prior to the Trustee's sale, the Trustee is directed to pay that lien out of the estate's share of the sale proceeds in the same priority as it would have been paid under state law, even if that would mean impairment of the homestead exemption.[4]

To the extent that either Ms. Rupp or Ms. England do not have a valid perfected lien against the Property, and to the extent the Trustee does not have sufficient funds to satisfy their claims from estate funds in excess of the homestead exemption, this Court must decide whether the Trustee should be compelled to pay their Section 523(a)(5) judgment(s) out of the Debtor's homestead funds. In order to decide this issue, the Court must first determine whether a Section 523(a)(5) creditor would be entitled to reach the home-

**3.** To the extent that the holding in *In re Giordano*, 177 B.R. 451 (Bankr.E.D.N.Y.1995), is that under New York law judicial liens can never impair the homestead exemption, this Court declines to follow that holding. First, such a holding would render Section 522(f) superfluous as it applies to New York debtors despite the legion of reported bankruptcy cases applying Section 522(f) to New York debtors. Second, the *Giordano* decision does not cite any New York case law, nor does it appear to have been cited by any other court for the proposition that under New York law judicial liens can never impair the homestead exemption. Indeed, the case of *First Federal Savings & Loan Association v. Brown*, 78 A.D.2d 119, 434 N.Y.S.2d 306 (N.Y.App.Div. 1980), holds that a judgment creditor can pursue surplus funds from a foreclosure sale before a debtor is paid his homestead exemption because the surplus funds are personal property and no longer protected by the homestead exemption. *See also Carman v.*

*European American Bank & Trust Co.*, 78 N.Y.2d 1066, 1068, 576 N.Y.S.2d 90, 581 N.E.2d 1345 (N.Y.1991) (finding that "despite the exemption, a lien against the exempt realty remains valid . . . unless the debtor takes affirmative steps to avoid it by making an application under section 522(f)(1) of the Federal Bankruptcy Code . . .").

**4.** To the extent that Ms. England receives any payment from the net sale proceeds under the Stipulation, so ordered by Judge Cyganowski on February 2, 2006 [attached as Exhibit A to motion to approve settlement—Doc # 11 in 805–88238], this payment would reduce any distribution to her on account of her judgment lien. There would be no similar reduction for Ms. Rupp because her portion of the net proceeds would be paid to her under the Stipulation as a co-owner of the property. Any collection by her on the Section 523(a)(5) judgment(s) should come only from the Debtor's/estate's share of the net proceeds.

stead exemption under state law, and then determine whether the proper state law attachment procedures were followed. According to the *Davis* case, the remedies of a Section 523(a)(5) judgment creditor must be pursued in accordance with state law because Section 522(c) is not an execution statute and does not confer any rights greater than that which existed outside of bankruptcy. *See Davis,* 170 F.3d at 479 ("[Section] 522(c) sought to leave exempt property exposed to post-bankruptcy liability only to the extent it would have been exposed if the bankruptcy had not occurred."). The *Davis* court cites to Fed. R.Civ.P. 69(a) which requires that enforcement of a judgment "shall be in accordance with the practice and procedure of the state in which the district court is held . . . ."

Procedurally, on this issue, this Court has before it: (1) a complaint for declaratory judgment seeking a determination that a homestead exemption does not apply to enforcement of child support arrears and requiring the Trustee to turnover to Ms. Rupp the $50,000 homestead funds sufficient to satisfy the obligations to Ms. Rupp; (2) an order to show cause seeking to restrain the Debtor's $50,000 homestead exemption from the net proceeds of the Trustee's sale in favor of satisfaction of Ms. Rupp's non-dischargeable child support judgment; and (3) Ms. England's objection to the Debtor's homestead exemption.

Ms. Rupp's counsel puts forth many equitable arguments under New York law in favor of allowing child support judgments to be paid from homestead funds. For example, Ms. Rupp cites 59 N.Y. JURISPRUDENCE 2ND EXEMPTIONS § 62, for the proposition that alimony and child support obligations are an exception to the homestead exemption. Specifically, the treatise states that:

Generally, claims for alimony and support are an exception to the exemptions granted by statute, on the theory that an adjudication of alimony or support is not a debt within the meaning of the exemption statutes; and also on the ground that an important and pervasive state law policy is to enforce the support rights of dependent spouses and children, even when such enforcement requires attachment of assets, earnings normally inalienable, or unassignable under state law.

59 N.Y. JURISPRUDENCE 2ND EXEMPTIONS § 62 (2005) (footnotes omitted).

None of the cases cited by N.Y. Jurisprudence or by Ms. Rupp in her papers, however, applied this general principle in the context of the homestead exemption; rather, the cases cited dealt with, for example, exempt pensions, disability payments, insurance policies, annuities and workers compensation benefits. *Compare* N.Y. Civ. Prac. L. & R. 5205 (personal property exemptions) *with* N.Y. Civ. Prac. L. & R. 5206 (real property exemptions). The exception of alimony and support obligations from the homestead exemption under New York law appears to this Court to be an issue of first impression. This Court is not inclined to apply existing case law holdings in the context of financial accounts and other personal property to the context of real property rights given the unique nature of, and special protections generally given to, the homestead exemption and other real property rights under state law.

 Because of the important public policy arguments made by Ms. Rupp in favor of excepting alimony and support obligations from the homestead exemption, and because this issue appears to be unsettled under New York case law, this Court will, in the exercise of its discretion, abstain from deciding the issues presented in

Ms. Rupp's adversary proceeding complaint. Section 1334(c)(1) of Title 28 permits this Court, "in the interest of justice, or in the interest of comity with State courts or respect for State law [to abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Permissive abstention is within the sound exercise of this Court's discretion where there are important and unsettled questions of state law at issue. *See In re A & D Care, Inc.*, 90 B.R. 138, 141 (Bankr.W.D.Pa.1988) ("Abstention is especially advised where there are unsettled questions of state law.") (citing *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940)); *Oregon v. Mushroom King, Inc.*, 77 B.R. 813, 818–19 (D.Or.1987) (". . . [A]bstention is appropriate if the case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.' "). "Permissive abstention based on the alleged novelty of the state law issues may . . . be appropriate, if the resolution of those issues involves matters of substantial public import, and if there exists no state precedent that will enable the bankruptcy court to predict with reasonable certainty the result that the state courts would reach were the issue before them." *A & D Care*, 90 B.R. at 141 (citing *In re Krupke*, 57 B.R. 523 (Bankr.W.D.Wis.1986)).

The Court, therefore, denies, without prejudice, Ms. Rupp's pending motion for summary judgment seeking declaratory judgment on the state law issue of whether the homestead exemption applies to en-

forcement of child support arrears. [Doc # 11 in Adv. Proc. No. 806–8369]. As a result, the Court also denies the second part of the relief requested by Ms. Rupp, *i.e.*, turnover of funds held by the Trustee.[5]

In light of this Court's ruling, the Court will dismiss Ms. Rupp's complaint, without prejudice, in favor of her seeking appropriate relief in the state court on or before June 25, 2007. The Court will continue the restraint imposed by Judge Cyganowski's August 29th Order [Doc # 60 in Case No. 805–88238] until August 6, 2007, without prejudice to any party seeking to extend or shorten the duration of the restraint for good cause shown. Ms. Rupp's motion to restrain the Debtor's homestead exemption [Doc # 56 in Case No. 805–88238], and the Debtor's motion to vacate the temporary restraint [Doc # 64 in Case No. 805–88238], are marked off this Court's calendar, subject to an application being made to restore those motions to the calendar for good cause shown.

Ms. England's motion to extend time to serve and file a third party summons and complaint is moot in light of the Court's ruling and the dismissal of Ms. Rupp's adversary proceeding. [Doc # 12 in Adv. Proc. No. 806–8369].

That leaves Ms. England's objection to the homestead exemption. The Debtor argues that the time to object to exemptions has expired and this should preclude relief in favor of Ms. Rupp and Ms. England. The Court is sympathetic to the Debtor's argument that the Section 341 meeting was improperly kept open and adjourned without a specific date and time, and the

**5.** Even if the Court were inclined to issue declaratory judgment in Ms. Rupp's favor, which it is not, Ms. Rupp's pleadings are deficient in their request for turnover. Consistent with Fed.R.Civ.P. 69, Ms. Rupp does not cite the New York statute applicable to enforcement of money judgments or attach-

ment, and the Court, therefore, could not know whether all of the procedural requirements of the state enforcement statute were complied with and would not have had the proper record upon which to make a finding under state law that the subject funds should be attached.

Court does not condone such practice. *See In re Friedlander,* 284 B.R. 525 (Bankr. D.Mass.2002). However, despite the movant's characterization of the motion as an objection to the homestead exemption, Ms. England is not, in fact, objecting to the Debtor's homestead exemption. Rather, Ms. England argues that these admittedly exempt funds are subject to payment of her Section 523(a)(5) non-dischargeable judgments. Indeed, if the funds were not exempt, they might be subject to payment of all creditor claims which could be detrimental to Ms. England's financial interests. (*See* Ms. Rupp's Supplemental Affirmation in Support of Motion for Summary Judgment at ¶ 8.) The Court dealt with this issue in the context of Ms. Rupp's adversary proceeding, and denies Ms. England's motion objecting to the exemption.

■ Ms. England's objection to the exemption alternatively sought to reduce any exemption to which the Debtor might be entitled, from $50,000 to $10,000. Assuming the timeliness of Ms. England's motion, the Court denies her request to so reduce the exemption amount. Section 522(b)(2)(A) permits States to opt-out of the federal exemption scheme, and in such case "State or local law that is applicable *on the date of the filing of the petition*" applies in the bankruptcy case. *See* 11 U.S.C. § 522(b)(2)(A) (2005). New York law increased the homestead exemption from $10,000 to $50,000 effective August 30, 2005. The Debtor filed this bankruptcy petition on October 10, 2005. Therefore, the Court finds that the $50,000 exemption was in effect as of the date of the Debtor's petition. The Court declines to adopt the holding of *Perry v. Zarcone,* 77 A.D.2d 881, 431 N.Y.S.2d 50 (N.Y.App.Div. 1980), which would have this Court apply the state law exemptions in effect on the date the debt was incurred. This holding directly contracts Section 522(b)(2)(A).

For the foregoing reasons, Ms. England's objection to the exemption is denied in its entirety. The Court declines to grant sanctions in favor of the Debtor. Despite the fact that the motion was ultimately denied, the Court declines to find that the motion was "frivolous."

A separate order consistent with this Memorandum Decision will issue forthwith.