**GRAND TETON MOUNTAIN INVESTMENTS, LLC,**
Appellant–Respondent,

v.

**BEACH PROPERTIES, LLC, and William F. Borders, Respondents–Cross Appellants,**

and

**BDCS, Inc., Respondent.**

Nos. SD 31826, SD 31828.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 17, 2012.

Opinion on Motion for Rehearing and Transfer Denied Oct. 3, 2012.

Application for Transfer Denied Dec. 18, 2012.

John M. Edgar, for Grand Teton's.

Thomas Glenn Stoll, for Borders & Beach Prop.

Daniel Edward Stoll, for BDCS.

DANIEL E. SCOTT, P.J.

We consider cross-appeals involving foreclosure sale proceeds. Only one claim of error is well taken. The trial court should have directed the net surplus to the foreclosed landowner, not to a non-party with no interest in the property. We affirm in part, reverse in part, and remand for entry of a new judgment.

### Background

Gary Prewitt and respondent William Borders are equal owners and members of Backwater Jacks, an LLC that operated a bar and restaurant. U.S. Bank lent Backwater Jacks $1.1 million, secured by a first deed of trust on Backwater Jacks' land and personally guaranteed by Borders and Prewitt.

A junior deed of trust held by another lender was acquired by appellant Grand Teton, which Prewitt controlled. When that note went into default, Grand Teton

bought the land at foreclosure. U.S. Bank then called its debt and scheduled its own foreclosure. To stop that sale, Prewitt purchased U.S. Bank's loan documents and assigned them to another of his LLCs, Backwater Bayou.

Backwater Bayou sued Borders on his personal guarantee of the U.S. Bank debt (the so-called "215 case," based on part of the case number). Settlement was reached on the following terms relevant to this appeal:

- Borders to pay principal and interest due on the notes,[1] plus attorney fees and court costs;
- Backwater Bayou to assign all loan documents without recourse;
- Borders to "immediately foreclose on the 1st Deed of Trust without interference from Prewitt or affiliates"; and
- "Prewitt if not the high bidder will remove himself from the premises within 30 days from date of foreclosure."

There was no mention of foreclosure proceeds or how to handle any surplus or deficiency.[2]

The court held a hearing and approved the settlement. Borders paid $1.3 million[3] as required and Backwater Bayou as-signed him the loan documents. However, Grand Teton then tried to redeem the property by tendering $1.2 million as "payment in full" on the notes.[4] Borders refused the tender. The court reconvened and directed that a foreclosure sale proceed according to the settlement agreement.

Borders assigned the loan documents to respondent Beach Properties ("Beach"), which he controlled. Beach got a loan from another bank (MB & T) to finance the acquisition, securing it with a collateral interest in U.S. Bank's loan documents.

Meanwhile, Grand Teton kept demanding to redeem the land for $1.2 million. The trustee resigned and Beach, as deed of trust holder, appointed respondent BDCS as successor trustee. BDCS was owned by the law firm that represented Borders, it shared the law firm's office space, and its officers were law firm employees.

Grand Teton sued to stop foreclosure, claiming an owner's right to redeem the property (the "268 case"). The judge was the same one who heard the 215 case. He refused to block the sale because the settlement agreement contemplated foreclosure, not redemption.

1. Hereafter, references to "notes," "loan documents," "deed of trust," etc., mean those from U.S. Bank unless otherwise indicated.

2. The record on appeal is devoid of evidence that the litigants ever agreed as to these. Nor did the foreclosing trustee or the trial court cite any such agreement in connection with their respective decisions about distributing the surplus.

3. Figures are rounded except amounts disbursed by the trustee or ordered by the court.

4. Redemption, a basic mortgage law concept intertwined with the rules governing foreclosure, is of two significantly different types. The first "is variously referred to as the 'equity of redemption', the 'equity of tardy redemp-tion' or as 'redemption from the mortgage.' The second type is referred to as 'statutory redemption.' " G. Nelson & D. Whitman, Real Estate Finance Law § 7.1, p. 768 (5th ed.2007). "It is a helpful oversimplification to look upon 'redemption from the mortgage' in its variety of terminology as a right that exists after default until there has been a valid foreclosure. Statutory redemption rights, on the other hand, ripen only *after* there has been such a valid foreclosure." *Id.* at p. 769 (footnote omitted). Neither type of redemption occurred in this case, so we need not address intricacies which Professors Nelson and Whitman consider at length. *See, e.g., id.* at §§ 1.3–1.4, 1.7, 3.1–3.3, 7.1–7.5, & 8.4–8.7.

Backwater Jacks had no interest in the land when BDCS conducted the trustee's sale. Grand Teton owned the property, subject only to the deed of trust being foreclosed. No other liens existed.

Grand Teton, the high sale bidder at $1.75 million, demanded to receive any surplus. Beach claimed $1,552,865.14 on the notes and for collection costs, plus all surplus. Borders sought any surplus owed to Backwater Jacks.

Faced with competing demands, BDCS sought legal advice. Counsel noted the deed of trust's direction to pay surplus to "the Grantor, or such person as may be legally entitled thereto," and opined that Backwater Jacks should receive any surplus. Later, Counsel reiterated this opinion, but also noted the possibility of interpleader. Thereafter, BDCS distributed the $1.75 million as follows:

| | |
|---|---|
| MB & T (to pay Beach's loan) | $1,352,713.64 |
| Beach | 198,151.50 |
| Backwater Jacks | 190,349.86 |
| BDCS (trustee fees) | 8,785.00 |
| TOTAL | $1,750,000.00 |

In the 268 case, after an accounting, a judicial declaration was sought as to proper payment of the proceeds. The case was submitted on a 400–page stipulated record, including 47 exhibits, from which the trial court made these findings:

- BDCS did not breach its fiduciary duties in relying on Beach's representation of its payoff amount;
- Beach's requested payoff amount was incorrect. Sale deductions, including trustee fees, totaled only $1,243,331.12;
- The actual surplus was $506,668.88;
- Beach was overpaid $316,319.02;
- Backwater Jacks, "as maker of the U.S. Bank Notes, and the grantor of the Deed of Trust to U.S. Bank, is entitled to the surplus...."; and
- As co-owners of Backwater Jacks, Prewitt and Borders should split the

surplus equally, receiving $253,334.44 each.

To facilitate this distribution, Borders was ordered: (1) as a member of Beach, to pay himself $62,984.58 and to pay Prewitt $253,334.44; and (2) as member of Backwater Jacks, to pay himself $190,349.86.

Grand Teton appeals and respondents cross-appeal. Our review is governed by Rule 84.13(d) and principles stated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm so long as the judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. We presume the judgment is correct, and challengers bear the burden to show both error and prejudice. *See Allen v. Allen*, 330 S.W.3d 838, 841 (Mo.App.2011).

### Grand Teton's Appeal

#### *Point I*

Grand Teton argues that it should have the surplus because it owned the foreclosed property. We agree.

■ The parties' extensive arguments about equitable and statutory rights of redemption unduly complicate the case, especially when no redemption occurred. It is sufficient to observe, as others have done, that a foreclosure sale surplus "retains the character of real estate for the purpose of determining who is entitled to receive it, and goes to the person to whom the real estate would have gone but for the conversion." *Roy v. Roy*, 233 Ala. 440, 172 So. 253, 254 (1937). Such surplus represents the owner's equity in the real estate. *Dodson v. Farm & Home Sav. Ass'n*, 208 Ga.App. 568, 430 S.E.2d 880, 881 (1993). It stands in place of the foreclosed property, subject to the same liens and interests that were attached to the land. *Timm v. Dewsnup*, 86 P.3d 699, 703 (Utah 2003).

Surplus "usually arises because more land is sold ... than is necessary to satisfy the mortgage debt.... [T]he money stands for the land and the rights therein are determined as though the court were dealing with the land itself." *Morris v. Glaser,* 106 N.J. Eq. 585, 151 A. 766, 771 (N.J.Ch. 1930) *aff'd mem.,* 110 N.J. Eq. 661, 160 A. 578 (N.J.Err. & App.1932). *See also First Fed. Sav. & Loan Ass'n v. Brown,* 78 A.D.2d 119, 434 N.Y.S.2d 306, 310 (1980) (foreclosure surplus "stands in place of the land for all purposes of distribution among persons having vested interests or liens upon the land"); *East Atlanta Bank v. Limbert,* 191 Ga. 486, 12 S.E.2d 865, 867 (1941) (quoting *Morris* ); G. Nelson & D. Whitman, *supra,* at § 7–31.[5]

■ Grand Teton owned the foreclosed land. The surplus represented its equity in the property. There were no junior lienors. Thus, the surplus belongs to Grand Teton.

The deed of trust directive to pay surplus to "the Grantor, or such person as may be legally entitled thereto," upon which BDCS and the trial court apparently relied, compels no different result. It cannot mean that "Grantor" Backwater Jacks, not otherwise entitled, should receive surplus legally belonging to another. *See* Restatement (Third) of Property (Mortgages) § 7.4, *comment d.* (1997) (that mortgage directs surplus to mortgagor does not improve mortgagor's claim; junior liens or other foreclosed interests are not lost even though senior mortgage purports to favor mortgagor). In this context, a provision to pay surplus to the grantor "or such person as may be legally entitled thereto" makes perfect sense. By contrast, it makes no

sense that a borrower and lender could contract *inter se* to deprive the true owner of a surplus that the lender could not claim after a forced sale of land that the borrower did not own.

Respondents' waiver argument fares no better. It is one thing to find, as the trial court did, that a settlement based on foreclosure kept Grand Teton from exercising its landowner right of redemption. It is far different to claim that the settlement contemplated or worked forfeiture of Grand Teton's equity in land appraised, by respondents' account, at nearly $1 million more than the debt against it. We find no persuasive support for a waiver claim in the record or at law.

Grand Teton's first point is granted.

### Point II

Grand Teton challenges the finding that BDCS did not breach fiduciary duties. Because Grand Teton did not sue for breach of fiduciary duty, or seek relief against BDCS on any similar theory, we deny this point for lack of prejudice.

### Respondents' Cross–Appeal

The three cross-appeal points charge error in calculating or directing payment to Backwater Jacks. Since we have determined that Backwater Jacks takes nothing, these points are moot, save in one respect.

■ Point III asserts, in part, that Beach's initial payoff claim was correct. We have no Rule 84.04(e) statement specific to this claim, which hampers our review.[6] It was Beach's burden to prove its

---

5. We freely cite treatises and non-Missouri cases recognizing equitable and common law traditions known to this court and shared by this state. *See, e.g., Reid v. Mullins,* 43 Mo. 306, 308 (1869).

6. Quoting *Anglin Family Investments v. Hobbs,* 375 S.W.3d 244, 249–50 (Mo.App. 2012):

> Rule 84.04(e) requires the appellant's argument to "include a concise statement of the

right to more money. The trial court weighed the stipulated facts and rejected this part of Beach's claim, much of which involved the MB & T–Beach loan. We see no basis to fault the trial court's decision, which was supported by facts, is not claimed to be against the weight of evidence, and has not been shown to misstate or misapply the law. We deny the cross-appeal.

## Conclusion

We affirm the judgment except as to disposition of the $506,668.88 surplus, which we reverse and remand for entry of a new judgment consistent with this opinion awarding all such surplus to Grand Teton.

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.

## *OPINION ON MOTION FOR REHEARING*

Before SCOTT, P.J., BATES, J. and BURRELL, C.J.

### PER CURIAM.

■ After we issued our opinion, Grand Teton sought rehearing as to Point II, citing Rule 55.33(b) and alleging in part that a breach of fiduciary duty claim was tried "by express and implied consent of the parties, and therefore must be treated in all respects as if it had been raised by the pleadings." Assuming *arguendo* this was true, Point II still fails.

■ Grand Teton cites BDCS's close relationship with Beach's counsel, but this did not bar BDCS from acting as trustee. *See Boatmen's Bank of Pulaski County v. Wilson,* 833 S.W.2d 879, 883 (Mo.App. 1992); *Cloud v. Kansas Loan & Trust Co.,* 52 Mo.App. 318, 322 (1893).

■ As to any initial overpayment to Beach, BDCS disbursed the sum that Beach claimed in writing as "the payoff amount of the U.S. Bank Note, together with the costs of collection and the expenses relating to the sale." Grand Teton cites no evidence that BDCS had cause to question Beach's representation and no case stating that a trustee, absent scienter, has a fiduciary duty to independently investigate a lienholder's calculation of secured debt. Rather, "in the absence of unusual circumstances known to the trustee, he may, upon receiving a request for foreclosure from the creditor, proceed upon that advice without making any affirmative investigation...." *Spires v. Edgar,* 513 S.W.2d 372, 378–79 (Mo. banc 1974).

Regarding the payment to Backwater Jacks, Grand Teton repeatedly argues that BDCS should have interpleaded the sale proceeds. But Grand Teton never suggests why the judge who rejected its claim in the 268 case would have viewed the same claim and evidence any differently in an interpleader action, or for that matter, how BDCS breached fiduciary duties in paying the same party to whom the court *also* ordered payment.

■ It was Grand Teton's burden to prove a breach of fiduciary duty. *Western Blue Print Co. v. Roberts,* 367 S.W.3d 7, 15 (Mo. banc 2012). The parties stipulated to

applicable standard of review for each claim of error." Although it may sometimes be possible to reach the merits of a claim of error that does not comply with Rule 84.04(e), "[n]oncompliance with this rule justifies dismissal of the point." *Citizens for Ground Water Prot. [v. Porter],* 275

S.W.3d [329] at 347 n. 6 [ (Mo.App.2008) ]. It is not that the appellate court cannot "determine the applicable standard of review, [rather] it is not our duty to supplement the deficient brief with our own research." *Waller v. Shippey,* 251 S.W.3d 403, 406 (Mo.App. W.D.2008).

a lengthy record, but the stipulated facts and their inferences did not all run in the same direction. Those 400 pages offered plenty from which any party could argue for its respective claims and positions. The trial court was not obliged to find from the stipulated record that Grand Teton carried its burden on this issue.

We overrule the motions for rehearing filed by Grand Teton and BDCS, and we deny the applications for transfer filed by Grand Teton and BDCS.